## Armitage-Herschell Co. and F. B. Townsend v. Isaac Potter, Coroner, use of, etc.

1. CHATTEL MORTGAGES—*Executed in Another State—When to be Enforced Here.*—A chattel mortgage executed in the State of New York, upon property in that State which is afterward removed to this State without the consent of the mortgagee, is valid in this State as long as it remains valid in the State where it was executed, and as such is enforceable here as against judgment creditors of the mortgagor.

2. SAME—*Consent for the Removal of the Mortgaged Property to One State Does Not Justify its Removal to Another.*—The consent of the mort-

gagee that the mortgaged property may be removed from the State of New York to the State of Wisconsin does not justify its removal to the State of Illinois.

**Replevin.**—Appeal from the Circuit Court of DeKalb County; the Hon. GEORGE W. BROWN, Judge, presiding. Heard in this court at the October term, 1900. Reversed and remanded. Opinion filed February 13, 1901.

JONES & ROGERS, attorneys for appellants.

The New York Court of Appeals defines a chattel mortgage thus:

" A chattel mortgage is a present transfer of the title to the property mortgaged, subject to be defeated on payment of the sum it is given to secure. In default of performance by the mortgagor of the conditions, the title of the mortgage becomes absolute." Parshall v. Eggert, 54 N. Y. 23; Blake v. Corbett, 120 N. Y. 331.

This is also true at common law and so held in New York. 3 Am. & Eng. Encyclopedia of Law, 175; Thomas on Mortgages, 429; Story on Bailment, Sec. 287–288; Huntington v. Mather, 2 Barber, 542; Parshall v. Eggert, 54 N. Y. 23; Bragelman v. Daue, 69 N. Y. 69; O'Rouke v. Hadcock, 114 N. Y. 557; West v. Crary, 47 N. Y. 425; Judson v. Easton, 58 N. Y. 664; Casserly v. Witherbee, 119 N. Y. 526.

The chattel mortgage from Chamberlain, Giles and Alguire to Armitage-Herschell Company, if valid in the State of New York, where made, will be enforced in the courts of Illinois under the law of comity. Mumford v. Canty, 50 Ill. 370; Schlee v. Guckenheimer, 179 Ill. 597; Shannon v. Wolf, 173 Ill. 259; Waters et al. v. Cox, 2 Ill. App. 129; M. C. R. R. Co. v. C. & M. L. S. R. R. Co., 1 Ill. App. 410; Clough v. Kyne, 40 Ill. App. 236; Phinney v. Baldwin, 16 Ill. 108; Roundtree v. Baker, 52 Ill. 241; Stacy v. Baker, 1 Scam. 417.

Many of the States recognize the law of comity in reference to the enforcement of contracts. Whitman v. Conner, 40 N. Y. Sup. Ct. 339, Nichols v. Mase, 94 N. Y. 167; Astra. Ins. Co. v. Aldrich, 26 N. Y. 97; Martin v. Hill, 12 Barb. 631; Wattson v. Campbell, 38 N. Y. 153; Edgerly v.

Bush, 81 N. Y. 199; Offutt v. Flagg, 10 N. H. 46; Winslow v. Troy Iron & Nail Factory, 1 Disney, 229; Peterson v. Kaigler, 78 Ga. 464.

W. L. PIERCE, W. C. KELLUM and T. M. CLIFFE, attorneys for appellee, contended that the situs of the property at the time of the execution of the mortgage was in the State of New York; the mortgage was executed by William M. Chamberlain, in the city of Belvidere, Boone county, Illinois; and his interest in the mortgaged property was levied upon by this execution. The forum in which the remedy is sought is in Illinois.

Where property situated in the State of New York is mortgaged by a citizen of another State, said mortgage being executed in the domicile of the owner, and there is a conflict between the laws and regulations in force in the State of New York, the *lex rei sitae*, and those in force where the owner's domicile is situated, in such case the rule must govern that where such conflict of law occurs as that one or the other of the parties must give way, the laws prevailing where the relief is sought must have the preference. Runyon v. Groshon, 12 New Jersey Equity, 86.

Where there is a conflict between the *lex rei sitae* and the *lex domicilii*, so one or the other of them must give way, the law of the place where the relief is sought must have the preference. Story on Conflict of Laws, section 388, page 849, 4th edition.

The effects of a contract entered into at any place will be allowed according to the law of that place, in other countries, if no inconvenience will result therefrom to the citizens of that other country with respect to the right which they demand. This distinction appears to us to be founded on the soundest reason. The municipal laws of a country have no force beyond its territorial limits, and when another government permits these to be carried into effect within her jurisdiction, she does so upon a principle of comity. In doing so, care must be taken that no injury is inflicted on her own citizens, nor can the foreigner or stranger complain of this if he sends his property within a jurisdiction differ-

Armitage-Herschell Co. v. Potter.

ent from that where he resides.   He impliedly submits it to
the rule and regulations in force in the country where he
places it.   What the law protects, it has a right to regulate.
Story on Conflict of Laws, section 388, page 650; Clark v.
Tarbell, 58 N. H. 88; Ames Iron Works v. Warren, 76 Ind.
512, 40 Am. Rep. 259.

The exercise of comity in admitting or restraining the
application of the laws of another country must rest in
sound judicial discretion dictated by the circumstances of
the case.   The statutes of one State have no extra-territorial
force *proprio vigore*, though often admitted by comity to
operate in another State for the promotion of justice where
neither the State nor its citizens will suffer any inconven-
ience from the application of them.   Parker, C. J., in
Blanchard v. Russell, 13 Mass. 6.

Comity between different States does not require the law
of one State to be executed in another when it would be
against the public policy of the latter State; no State is
bound to recognize and enforce contracts which are inju-
rious to the welfare of its people or which are in violation of
its own law.   Pope v. Hanke, 155 Ill. 628;   Story on Con-
flict of Laws, section 327; Faulkner v. Hyman, 142 Mass.
53; Hill v. Spear, 50 N. H. 253; Mumford v. Canty, 50
Ill. 370.

The principle embodied in the maxim *mobilia sequuntur
personam* is generally recognized in all civilized countries
and it follows as a natural consequence, says Story (Con-
flict of Laws, 383), that "the laws of the owner's domicile
(or the *lex loci contractus*) should in all cases determine the
validity of every transfer, alienation or disposition made
by the owner, whether it be *inter vivos* or be *post mortem*."
The authority of such laws, however, is admitted in other
States not *ex proprio vigore* but *ex comitate*, and hence it is
now very generally held that when they clash with and
interfere with the rights of the citizens of the countries
where the parties to the contract seek to enforce it, as one
or the other of them must give way, those prevailing where
the relief is sought must have the preference.   Hornthal v.

Burwell, 109 N. C. 10; 26 Am. Rep. 557; citing Oliver v. Townes, 14 Mart. (La.) 93; 2d Kent's Com. 458; Moye v. May, 8 Ired. Eq. 131; Runyon v. Groshon, 12 N. J. Eq. 93.

No nation is bound to recognize or enforce any contract which is injurious to its own interests or to those of its own citizens or which is in fraud of its own laws. Smith v. Godfrey, 61 Am. Dec. 617; Phinney v. Baldwin, Id. and notes, 64.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

In the month of June, 1894, William M. Chamberlain and Marshall C. Giles, of Belvidere, Illinois, and Charles G. Alguire, of Grand Forks, North Dakota, purchased from the Armitage-Herschell Company, a corporation doing business in the village of North Tonawanda, in the town of Wheatfield, Niagara county, New York, a steam riding gallery complete, including an engine and boiler, for the sum of $1,660. By the terms of the purchase the sum of $200 was to be paid in cash and the balance to be paid according to the terms of fifteen promissory notes, dated June 22, 1894, falling due from time to time up to September 1, 1896, and secured by a chattel mortgage on the property sold. The mortgage was also dated June 22, 1894, and was on that day executed and acknowledged by Marshall C. Giles, in Niagara county, New York, but it had previously been executed and acknowledged by William M. Chamberlain, in Boone county, Illinois, on June 11th, and by Charles C. Alguire, in Grand Forks, North Dakota, on June 14th. The notes and mortgage were delivered on the day of their date to appellant company, and on the next day, June 23d, the mortgage and a copy thereof were filed in the office of the town clerk of said town of Wheatfield. On said last mentioned day the property was delivered to the purchasers upon the cars in the yards of the company at its place of business at North Tonawanda, New York, but, for the purpose of saving freight, was billed to said company at Janesville, Wisconsin, the company having special arrangements for shipping at low rates to that point. About July 2, 1894, T. M. Chamberlain, one of the

persons for whose use this suit was brought, and who resided at Belvidere, Illinois, went to Janesville, took possession of the property, and brought it to Illinois. On the same date William M. Chamberlain executed to him a bill of sale or chattel mortgage of his entire interest in the property, " subject to mortgage held by Armitage-Herschell & Co., Tonawanda, N. Y., for a sum of money paid to me in hand, this date in hand, said T. M. Chamberlain to have and to hold until said T. M. Chamberlain's claim is settled in full." This instrument was filed for record in the office of the recorder of Boone county, Illinois, August 19, 1895. On June 22, 1895, the Armitage-Herschell Company filed a true copy of its said mortgage, with indorsement showing the filing thereof, together with a statement showing the interest claimed by it in the property by virtue of said mortgage and the amount of the indebtedness remaining unpaid, with the town clerk of said town of Wheatfield, for the purpose of extending the lien of said mortgage another year. On August 26, 1895, James N. Shafter, sheriff of DeKalb county, Illinois, by virtue of an execution issued out of the County Court of Boone County, Illinois, in a suit wherein Oliver A. Larkins, for the use of W. H. Gilbert, was plaintiff, and William M. Chamberlain and others were defendants, levied upon the undivided one-third interest of William M. Chamberlain in the property in question, " subject to a certain mortgage thereon to T. M. Chamberlain, dated July 2, 1894." After the property had been levied upon and taken possession of by the sheriff, the Armitage-Herschell Company made a demand upon him for possession of the same which was refused, and soon afterward the said company brought suit in replevin for the property against the sheriff and T. M. Chamberlain, giving to the coroner, who served the process and took possession of the property from the sheriff, the bond sued upon in this case, which is dated September 7, 1895. The property was turned over to the Armitage-Herschell Company, who foreclosed its mortgage against the same and sold it for $1,211. At the October term, 1896, of the Circuit Court of DeKalb County, where the replevin suit was pending, the Armitage-

Herschell Company dismissed the same, and on February 10, 1897, appellee brought this suit on the replevin bond. Upon the trial a jury was waived and the court found for appellee, assessing his damages at $600. Judgment was thereupon entered against appellant for $2,000 debt, to be satisfied upon the payment of $600 damages and costs of suit.

There is no controversy as to the evidence in the case but the questions involved are raised by the propositions of law presented to the court by appellant and refused.

That the original chattel mortgage to the Armitage-Herschell Company was good in the State of New York, does not seem to be seriously questioned. In regard to the renewal of chattel mortgages, it is provided by the laws of the State of New York offered in evidence that every such mortgage " shall cease to be valid as against the creditors of the person making the same or against subsequent purchasers or mortgagees in good faith, after the expiration of one year from the filing thereof, unless within thirty days next preceding the expiration of each and every term of one year after the filing of such mortgage, a statement describing such mortgage, stating the names of the parties, the time when and the place where filed, and exhibiting the interest of the mortgagee in the property thereby claimed by him by virtue thereof, shall be again filed in the office of the clerk or register aforesaid, of the town or city where the mortgagor shall then reside. * * * If not a resident of the State then such statement shall be filed in the office of the clerk or register of the town or city where the property so mortgaged was at the time of the execution of such mortgage."

The original mortgage was filed June 23, 1894, the renewal statement was filed June 22, 1895, and the same substantially complied with the requirements of the New York statutes. The mortgage as renewed was therefore also good in the State of New York.

The question then arises whether the mortgage as renewed was good in the State of Illinois as against the judgment creditors of William M. Chamberlain. By the

terms of the chattel mortgage it is expressly agreed that the property should not be removed from the State of New York nor from one State to another without the written permission of the Armitage-Herschell Company.. The gallery was shipped to Wisconsin by the company and they thereby gave their consent to its removal from the State of New York, but the evidence shows that it was removed from the State of Wisconsin to the State of Illinois without either the knowledge or consent of the mortgagee. Under such circumstances the lien of the Armitage-Herschell Company must be held to .be good by the laws of this State, even against a judgment creditor of William M. Chamberlain.   Waters v. Cox, 2 Ill. App. 129.

The levy made by the sheriff under the execution in his hand was upon the undivided one-third interest of William M. Chamberlain "subject to a certain mortgage thereon to T. M. Chamberlain, dated July 2, 1894," and the bill of sale or chattel mortgage from William M. to T. M. Chamberlain was made "subject to mortgage held by Armitage-Herschell & Co., Tonawanda, N. Y." If the property had been sold, the debt secured by the conveyance to T. M. Chamberlain must have been paid before that for which the execution was issued. But the debt of T. M. Chamberlain could not have been paid until the mortgage of the Armitage-Herschell Company was satisfied. The levy upon the execution must therefore be held to have been made subject to the mortgage of the Armitage-Herschell Company.

For the reasons above.given the judgment of the court below will be reversed and the cause remanded.