## STATE ex rel E. C. KENNAN, Respondent, v. FIDELITY & DEPOSIT CO. et al., Appellants.

### St. Louis Court of Appeals, April 15, 1902.

1. **Mortgage:** FRAUD ON FACE OF MORTGAGE. A mortgage which provides that the mortgagors shall remain in possession and continue to sell goods in the ordinary course of business, and further provides that the mortgagors shall account for and pay over the proceeds of their sales to the mortgagee, is not to the use of the mortgagors and is not fraudulent on its face.

2. **Estoppel:** ATTORNEY. Where an attorney accepts a claim for collection against a co-partnership on whose stock of goods he held a mortgage, and failed to notify the parties from whom he received the claim that he held such mortgage, his conduct was not such as to estop him from claiming under the mortgage after the parties had taken the collection of the judgment out of his hands and caused the goods to be levied upon on an execution taken out at their instance, and after they had learned of the existence of the mortgage.

3. **Error:** INSTRUCTION: PRACTICE, TRIAL: PRACTICE, APPELLATE. Where it is error to use the phrase, "in good faith," without explanation, in an instruction for respondent, the appellant is in no condition to complain when the same phrase, without explanation, is used in an instruction for appellant.

4. **Burden of Proof:** The burden of proof is on the party alleging an affirmative defense.

5. **Damages:** INTEREST AS ELEMENT OF DAMAGES. Under section 2869, Revised Statutes 1899, a jury may allow, as the proper measure of damages for the conversion of goods, the value of the goods at the time of the taking together with six per cent per annum interest.

Appeal from Audrain Circuit Court.—*Hon. Elliott M. Hughes,* Judge.

AFFIRMED.

*J. F. Woodson* for appellants.

(1)   And a part of the mortgage indebtedness being thus void so far as the security was concerned, the entire mortgage was vitiated.   State to use v. Hope, 102 Mo. 410; Boland v. Ross, 120 Mo. 208; Gregory v. Sitlington, 54 Mo. App. 60; Ball v. O'Neill, 64 Mo. App. 388; Lumber Co. v. Mining Co., 78 Mo. App. 676.   (2)   The relationship of attorney and client is one of trust and confidence, and dealings between them are carefully watched and guarded the same as that of guardian and ward.   3 Am. and Eng. Ency. Law (2 Ed.), 334-335; not mentioned supra.   (3)   Plaintiff's instruction No. 7 was erroneous for the reason that it uses the words "in good faith for the purpose of securing an honest debt."   In commenting upon an instruction containing these words Judge SMITH, of the Kansas City Court of Appeals, says:   "The language of an instruction should be plain, unambiguous English that a wayfaring man, though a fool, may not err therein."   And that court held that such words in an instruction were highly improper and reversible error.   Dry Goods Co. v. Schooley, 66 Mo. App. 406.

*Fry & Clay* for respondent.

(1)   There are no elements of estoppel in this case. To constitute estoppel *in pais* there must have been a false representation or a concealment of material facts, made with knowledge of such facts, to one who was ignorant of the truth of the matter, with the intention that he should act upon it and that he was induced to do so.   Shields v. McClure, 75 Mo. App. 631; Blodgett v. Perry, 97 Mo. 273.   (2)   Fraud is an essential element of estoppel.   No man can set up another's conduct as a ground of estoppel unless he has himself been misled by such conduct, nor when he knew or had the same means of knowledge as to the truth, nor when he has

not suffered loss.   Hequembourg v. Edwards, 155 Mo. 522. (3)   The mortgage, by its terms, while it provided for the mortgagor to remain in possession and sell, further required him to apply the proceeds to the mortgage debt, and was valid on its face, and plaintiff's first instruction was properly given. Bank v. Powers, 134 Mo. 432; Dunham v. Stevens, 160 Mo. 95.   (4)   The issue as to fraud, in fact, was submitted to the jury by the court under instructions 7 and 8, given at the request of defendants, and the finding being against defendants, that issue is not reviewable on appeal.   Hardware Co. v. Randall, 69 Mo. App. 342.

BLAND, P. J.—Appellants are a mercantile firm doing business in the city of St. Joseph, Missouri.   The respondent is an attorney at law residing at Laddonia, Audrain county, Missouri.   J. G. Harley and M. G. Harley, composing the firm of J. G. Harley & Company, on and prior to January, 1900, were doing a small general mercantile business at the town of Laddonia and were, prior to January, 1900, indebted to the appellants in the sum of four hundred and fifteen dollars.   On or about the third day of February, 1900, appellants, through their attorney, J. F. Woodson, at St. Joseph, transmitted their account against J. G. Harley & Company to respondent for collection, with instructions to collect or sue immediately.   Respondent received the account for collection and made demand on Harley & Company for payment.   The account was not paid.   Afterwards respondent procured the promissory note of J. G. and M. G. Harley for the amount of the claim and brought suit in the Audrain Circuit Court thereon and, on the twelfth day of June, 1900, obtained a judgment for the amount due on the note.

On the fourth day of January, 1900, J. G. and M. G. Harley executed and delivered to respondent a chattel mortgage on their entire stock of merchandise, consisting in part of dry goods, boots and shoes, hats and caps, fancy goods, dress

State ex rel. v. Fidelity & Deposit Co.

goods, notions, groceries and provisions, rubber goods and boys' and men's clothing, as well as their store furniture and fixtures, located in the DeLaporte storehouse in block five of the original town of Laddonia, to secure their promissory note of even date for the sum of nine hundred and eighty-eight dollars and eighty-two cents payable to respondent due ten days after date. The mortgage was made to include and cover all merchandise that thereafter might be from time to time added to the stock and the mortgagors were permitted to remain in possession and sell from their stock in the usual and ordinary course of business, at retail only, upon the express stipulation and agreement that they should keep a true and accurate account of each day's sale and sell only for cash, and that the proceeds of all sales made by them should, at the close of each week's business, be turned over to the mortgagee and applied to the first payment of the debt secured until the whole of the debt, interest, cost and expense should be paid. This mortgage was duly acknowledged on the day of its date and was filed for record on the third day of February, 1900. At the instance of appellants' attorney at St. Joseph an execution was issued on their judgment against Harley & Company on the twenty-second day of August, 1900, and delivered to the sheriff of Audrain county, who levied on the property described in the mortgage, being all the property then owned or possessed by Harley & Company. When the levy was made, respondent gave notice to the sheriff that he was in good faith the lawful owner of the whole of the property levied on and that the defendants in the execution had no right or title whatever in said property; that said claim was not made in collusion with the defendants for the purpose of delaying appellants in obtaining their rights, which notice was duly sworn to by respondent. Thereupon the appellants gave the statutory indemnity bond to the sheriff, on receipt of which, the sheriff proceeded to sell all of the goods levied on under the execution. The suit is on this bond for the

recovery of the value of the property levied on and sold by the sheriff.

The answer was a general denial of the allegations of the petition and especially set up as a defense the recovery of the judgment against Harley & Company, the issuance of the execution thereon, and the levy and sale by the sheriff under the execution.

The answer further pleaded the execution by Harley & Company of the chattel mortgage of January 4, 1900, to respondent, alleged that said mortgage was fraudulent and void because given for the purpose of hindering, delaying and defrauding creditors of Harley & Company, including the appellants, which fraudulent intent, the answer alleged, was known to the respondent; that the mortgage was fraudulent for the further reason that it was agreed at the time of its execution, by and between the mortgagors and mortgagee, that Harley & Company might buy and sell merchandise in the usual course of business at retail and that the Harleys could retain the proceeds from the sale of the goods for their own use, and that they did keep and retain said proceeds of sales from the mortgaged stock with the knowledge and consent of the mortgagee; that respondent, knowing that the mortgage was fraudulent, was nevertheless acting as attorney for the appellants and that the appellants having no knowledge of the existence of the chattel mortgage or of the fact that the same was fraudulent and void, relied upon the respondent as their attorney to take such action for the collection of the debt as was necessary, but that, unmindful of his duty to appellants as his clients, he took no action at the time of the acceptance of his employment as the attorney of appellants for the collection or protection of their claim, but continued to participate in the fraud of permitting Harley & Company to sell the mortgaged goods and to use the proceeds for their own use; that respondent, still acting as attorney for appellants, was also the attorney of Harley & Company and failed and refused to have execu-

tion issued on appellants' judgment against the Harleys by reason of which failure and refusal the appellants were defeated in the collection of their claim and that respondent was estopped by his conduct to set up any claim to the goods levied upon under said chattel mortgage as against the appellants; that the mortgage was void for the further reason that it was understood by and between the mortgagors and mortgagee that the mortgagors should remain in possession of the stock of merchandise and buy and sell in the ordinary course of business and that the mortgage was to cover all the goods added to the original stock and that from and after the execution of the mortgage, by agreement, with the knowledge and consent of the mortgagee, the mortgagors did remain in possession of the stock of goods and continued to conduct the business of buying and selling goods in the ordinary course of business; that they failed to pay over and account to said mortgagee for the proceeds of sale of said merchandise covered by the chattel mortgage and that Harley & Company, by agreement and with the consent of the mortgagee, obtained the proceeds of the sale and used and disposed of the same as they saw fit.

The reply was a general denial.

Plaintiff to sustain the issues on his part offered and read in evidence the chattel mortgage executed by J. G. and M. G. Harley to the plaintiff, and also the promissory note to secure which the mortgage was given. On the note were indorsed the following payments:

"Paid on this note aggregate payments up to July 14, 1900, five hundred dollars, credit as of date, April 4, 1900.

"Paid from July 17, to August 21, 1900, $70, which sum is credited of date, August 18, 1900."

Plaintiff testified that the payments indorsed on the note were all the payments that had been made on it.

The evidence tends to show that on January 4 the respondent had several claims against Harley & Company for

collection, two or three of which had been reduced to judgments in a justice court and that he had paid part of two of them; that Mr. Robinson, an attorney, had a claim of three hundred and fifty-eight dollars and one other claim of a less amount upon which suits had been brought; that Harley & Company went to the respondent and asked him to advance money to pay these claims so that the firm could sell the goods themselves without a sacrifice; that respondent agreed to pay and did pay all the claims he had for collection against Harley & Company as well as those that Mr. Robinson had; that respondent had an individual claim of one hundred and eighty-four dollars against Harley & Company. This claim, including what he had paid for the Harleys, amounted to nine hundred and ninety-eight dollars and eighty-four cents. To secure this amount Harley & Company executed and delivered the mortgage to respondent. At the time the mortgage was given respondent had no knowledge of the existence of appellants' claims against the Harleys, and he put the mortgage on record about the time he received the claim of appellants for collection. The balance of the note was yet due and unpaid. Of the one hundred and eighty-four dollars of respondent's individual claim, one hundred dollars was due him as attorney's fees for services he had theretofore rendered for Harley & Company. The balance, eighty-four dollars, was for rent of a dwelling house he had rented to Harley & Company for a term of one year beginning January 1, 1900, and ending December 31, 1900. The mortgage included all the property that Harley & Company owned.

The firm of J. G. and M. G. Harley was composed of J. G. Harley and his wife. Appellants introduced and read in evidence the following letter:

"Laddonia, Mo., February 3, 1900.
"J. F. Woodson, Esq., St. Joseph, Mo.
 "Dear Sir: Yours of January 30, containing claim of

McDonald & Co. v. Harley & Co., at hand. I have presented same and urged payment, but am told by Mr. Harley that it is impossible for him to meet it now, but he assures me that it will be paid 'just as soon as possible' which I suppose is the same old story that he has been giving you and your clients for some time. In compliance with your suggestion I will institute suit in a few days if I can not arrange to secure it, which I doubt if I can do.

"Yours very truly,

"E. C. KENNAN."

On cross-examination respondent stated that he did not at any time inform the appellants that he held a mortgage on the merchandise of Harley & Company; that he did not put his chattel mortgage on record until after he had received the account from defendant for collection; that when the mortgage was given, J. G. Harley told him that he expected to get some money from his daughter who lived near Hannibal, who had promised to help him, and that he expected the money from her to take up the mortgage, and said, "Now Mr. Kennan, you know the effect of that mortgage," and for the reason that Harley expected the money he did not put the mortgage on record when it was first executed; that there was no arrangement or understanding that he should not put it on record; that there was no arrangement made or any defined extension of time in which Harley & Company should make payments; that he permitted them to make payments each day if they had it, or each week or as often as they could, and that the amounts indorsed on the notes as payments were comprised of various payments and that the payments were made in sums of about ten dollars each; that he did not know, when the mortgage was executed, whether they owned any other property or not, outside of household goods, and did not know that the firm was insolvent; that he had no agreement or understanding with them that they could use any part of the

stock or the proceeds of the sale for living expenses or the payment of rent for the storehouse or for the purpose of buying new goods and did not know that Harley was buying goods; that he put in the clause covering merchandise thereafter acquired for the purpose of preventing confusion in the event he might have to take possession of the goods under the mortgage and wanted to avoid a contingency that might arise, if other parties claimed any portion of the goods, if he should have to foreclose; that he did not intend to absolutely say whether the firm should buy new goods or not; that he could not control that; that they told him they ought to have new goods and should have them to keep up the stock; that he said he wouldn't give his consent to that kind of an arrangement; that he had no recollection of J. G. Harley telling him that they had taken money and bought new goods; that he didn't know that they had bought new goods; that when Harley was paying money he would say, "Here is ten dollars, or here is twenty dollars, or here is whatever it is, and that is all I have been able to get in, this is all I have been able to sell, or something of that kind;" that the Harleys never rendered a written statement of the articles so sold or the prices thereof or to whom sold, in that sense, never rendered him any written account and he did not know whether they were keeping a true and accurate account of the daily sales and he did not know whether they were selling only for cash and never required any written account from them.

On redirect examination he stated that he presented the appellants' account to the Harleys for payment about the day he received it; that they were unable to pay it and he afterwards induced them to give him a note due one day after date so that he could sue on the note and avoid the expense and trouble of proving the account; that he brought suit in the first term of the court in which it could be brought; that the books of Harley & Company were open for his inspection at any time and that he did inspect them sometime in Jan-

uary; that he was the attorney for Harley in two suits brought against him in the circuit court on accounts for merchandise; that he was not his attorney in any other matter; that he did remember that Harley & Company rented the DeLaporte store in Laddonia; that he did not know that they paid the rent out of the proceeds of the goods.

J. G. Harley testified that he paid eleven dollars a month rent to Mr. DeLaporte for the storehouse and paid at the end of each month and continued to pay after the execution of the mortgage and that he got the money from the proceeds of the sale of the goods; that the respondent represented him in some suits in the circuit court; that he did not think he ever had any other attorney than Kennan; that he told Kennan when he executed the mortgage that he would rather he would not record it that it would affect his credit at home and abroad; . that Kennan presented the McDonald claim and demanded payment right then and there; that he told him that he could not pay it, that he had no money to pay it with, and he entered his appearance in the McDonald suit against him and permitted the judgment to go against him; that a book he had lost showed from whom he had bought the goods; that he had taken money out of the stock and that he had taken goods out of the stock and showed his account with Kennan after the execution of the mortgage.  He bought goods from Dyer Bros., Evans & Co., LaCross Vinegar Company, Springfield Paper Company, and another claim of one hundred and five dollars from a New York firm, and he got his living out of the store and what he could borrow; that he got a great deal of it out of the goods; that he rendered no written account to Kennan; that he had a book there and Kennan could come in and look at it every day or any day; that he considered Kennan the owner of the stock; that he paid Kennan all the money that he could and that he kept the account on his books; that he showed it to Kennan at one time he remembered of,

which was shortly after the mortgage was given, and that he had taken goods out of the store then to live on; that he did not know that Kennan knew that he was paying rent out of the store or that he was living out of the store; that he didn't know whether Kennan examined the book or not which showed that he had taken goods out of the store to live on and money to pay the store rent. The book was there and he told him that he could look at it but he didn't know what sort of an examination he made of it; that he had paid for some of the goods that he had bought after the mortgage was given from the proceeds of the sales made in the store, some of it he had borrowed; that when Kennan would come down to the store after money he would usually pay him ten dollars at a time because he didn't want to pay him less; that Kennan would frequently ask if he could make a payment and if that was all he could spare. He (Harley) didn't tell him that he took things out of the store; that when the stock was levied on all of the books were lost except the ledger and bills of purchase; that he brought the ledger into court and left it with the clerk, he thought that he had paid Kennan five hundred and seventy dollars altogether; that he paid the January rent on the first day of February.

The goods at sheriff's sale sold for four hundred dollars.

Defendant offered in evidence a letter of J. G. Harley & Company dated January 27, 1900, in answer to a dun that had been made upon them in payment of defendant's account, in which they pleaded for time but made no mention of the fact that they had given Kennan a chattel mortgage on the goods.

J. G. Harley further stated that when he gave Kennan the mortgage he told him that he expected money from his daughter and that was the reason he made the note due ten days after date.

There was a verdict and judgment for the plaintiff for four hundred and eighty-three dollars and seventy cents. After

unsuccessful motions for new trial and in arrest defendants duly appealed.

I. At the close of the evidence appellants asked an instruction in the nature of a demurrer to the evidence, which the court overruled. Appellants' contention is that this instruction should have been given for the reason the mortgage is fraudulent on its face and for the further reason that the respondent was estopped by his conduct to claim under the mortgage, as against the appellants. While the mortgage provided that the mortgagors might remain in possession and continue to sell goods in the ordinary course of business, it further provided that they (the mortgagors) should account for and pay over the proceeds of their sales to the mortgagee. The mortgage was not, therefore, to the use of the mortgagors and was not fraudulent on its face. Dunham v. Stevens, 160 Mo. 95; Bank v. Powers, 134 Mo. 432. Whatever may be said in regard to the respondent's professional conduct in accepting the claim of appellants for collection and failing to notify them of his mortgage, his conduct was not such as to estop him from claiming under the mortgage after the appellants had taken the collection of the judgment out of his hands and caused the goods to be levied upon on an execution taken out at their instance and after they had learned of the existence of the mortgage. Respondent had represented nothing to appellants nor concealed anything on which they were induced to act, and they lost no right that they had before the claim was received by respondent for collection. The withholding of the information of the existence of the mortgage is not shown to have prejudiced the appellants in the collection of their claim or to have occasioned them any loss. Some of the necessary elements to constitute an estoppel are therefore lacking. Shields v. McClure, 75 Mo. App. 631; Blodgett v. Perry, 97 Mo. l. c. 273; Hequembourg v. Edwards, 155 Mo. l. c. 522. The cases of Alleman v. Manning, 44 Mo. App. 4, and Akers v. Hobbs, 105 Mo. 127, cited by appellants,

are cases in which the parties pleading the estoppel had been induced to change their course of action by the conduct of the opposite party and who would have been prejudiced in their property rights had not the doctrine of estoppel been applied. No such conditions exist here and these cases have no application to the facts in this case.

II.   Instruction No. 3, given for respondent, is criticised for the reason that the phrase "in good faith" is used in the instruction without explanation as to its meaning.   The instruction reads as follows:

"The court instructs the jury that although you find from the evidence that E. C. Kennan received from McDonald & Company an account against Harley & Company for collection, and that he placed his mortgage on record immediately after receiving said account, and that he did not notify McDonald & Company that he had a mortgage on said stock of goods, these facts are not sufficient to constitute a defense of estoppel herein, if you further find from the evidence that the note and chattel mortgage read in evidence was given by said Harley & Company to said E. C. Kennan in good faith for a valid debt."

If the phrase should be stricken out of the instruction, it would be complete.   The use of the phrase was mere surplusage and did not in the least prejudice appellants or invalidate the instruction.   The same may be said of instruction No. 7, of which appellants also complain.   The same phrase used in the same connection is found in instruction No. 4, asked for and given on the part of appellant.   If, therefore, it was error to use the phrase in respondent's instruction without explanation, the appellants are guilty of the same error and are in no condition to complain.   Grocery Co. v. Smith, 74 Mo. App. 419; Christian v. Ins. Co., 143 Mo. 460.

III.   There was evidence tending to show that the mortgage was fraudulent in fact, and also countervailing evidence. On this issue the jury were fully and fairly instructed by

the court. The appellants, however, complain that instruction No. 7, given for plaintiff casts the burden of showing fraud in fact on the appellants when, as they contend, the burden was on the respondent to show affirmatively that the mortgage was not fraudulent in fact. In support of their contention appellants cite State to use v. O'Neil, 151 Mo. 67. In the O'Neil case the suit was against a sheriff on his official bond who had seized the mortgaged property under attachment writs. The plaintiff alleged that the goods were hers, and to establish her title relied upon a chattel mortgage executed to her by the defendant in the attachment suits. In this state of the pleadings the Supreme Court very properly held that the burden was on the plaintiff to prove the validity of her mortgage. The situation in the case in hand is radically different. Here the respondent gave notice of his claim to the goods under the statute. The sheriff took cognizance of the notice and demanded an indemnity bond, which was given by the appellants, on which this suit was brought. By giving the indemnity bond the appellants assert title in Harley & Company, and in their answer they allege that respondent claimed the goods under and by virtue of his mortgage and allege that the mortgage was fraudulent on its face and fraudulent in fact. Having alleged this affirmative defense to the plaintiff's right to recovery, the burden was on appellants to establish that defense by a preponderance of the evidence.

IV. Appellants assigned as error the giving of instruction No. 11, on the measure of damages. The instruction is as follows:

"The court instructs the jury that if you find for the plaintiff you should return a verdict for the amount of the balance due on the note held by E. C. Kennan, read in evidence, not exceeding the value of the stock of goods, furniture and fixtures levied upon by the sheriff under the execution. referred to in the evidence, on the twenty-seventh day of

August, 1900, to which you may add six per cent interest from that date to the present time."

The admitted facts are that the levy was made on August 27, 1900. This is therefore the date on which the goods were taken and converted, and their value on that date, with six per cent interest per annum, is the proper measure of respondent's damages to be allowed or disallowed in the discretion of the jury. Sec. 2869, R. S. 1899; Carson v. Smith, 133 Mo. 606.

The instruction is not as definite and full as it should have been in calling the attention of the jury to the fact that the allowance of interest was in their discretion. But it did, in fact, leave the allowance of interest to the discretion of the jury and if the defendants were not satisfied with the instruction they should have asked for a more definite direction.

Discovering no reversible error in the record the judgment is affirmed. *Barclay*, and *Goode, JJ.*, concur.