ED ADAMSON, RESPONDENT, v. WALTER FOGELSTROM, DEFENDANT; W. M. LEITCH SHEEP COMMISSION COMPANY, APPELLANT.*

Kansas City Court of Appeals.   December 5, 1927.

*Corpus Juris-Cyc References: Attachment, 6CJ, section 22, p. 40, n. 86; Chattel Mortgages, 11CJ, section 1, p. 399, n. 3; section 33, p. 425, n. 10; section 338, p. 623, n. 19; section 339, p. 624, n. 35; Evidence, 22CJ, section 87, p. 151, n. 95; 23CJ, section 1950, p. 133, n. 30.

*C. A. Capron* and *W. M. Glenn* for respondent.

*Harzfeld, Beach & Steeper* for appellant; *C. H. Haas* of counsel.

FRANK, C.—This is a suit by respondent, Adamson, against defendant Fogelstrom, seeking recovery on an account for labor performed by respondent and others, with attachment in aid and W. M. Leitch Sheep Commission Company was summoned as garnishee. The suit originated in the justice court of Jackson county where plaintiff recovered judgment and garnishee appealed. Upon a trial *de novo* in the circuit court, plaintiff against recovered judgment against the garnishee. The case is here on garnishee's appeal.

The trial below was to the court on an agreed statement of facts, as follows:

"It is agreed between the plaintiff and the defendant that the following is the correct statement of facts, upon which the above case is submitted to the court.

"That the defendant, Walter Fogelstrom, is a ranchman or farmer in Wallace county, Kansas, whose post office is Wesken, Kansas. Plaintiff contends that defendant Fogelstrom employed different men as hired men or help upon said farm or ranch; that among the men employed by said Fogelstrom was one named Ed Adamson, this plaintiff; one named Wayne Starkey, and one named Robert Adamson, and that the said Robert Adamson and Wayne Starkey have transferred and assigned their claims to Ed Adamson, who is the plaintiff herein; that said three men, to-wit:. Ed Adamson, Robert Adamson and Wayne Starkey claim as wages as follows:

"Ed Adamson ...............................$48.40
"Robert Adamson ........................... 215.00
"Wayne Starkey ............................ 225.49

which makes a total claim of $488.89

"Defendant Fogelstrom was the owner of a large quantity of sheep, about 1000 head; also about seventy horses and other goods used and found upon a large farm. That the State Bank of Sharon Springs, Kansas, had a chattel mortgage on Fogelstrom's chattel property to the amount of about $5800, which was duly filed in accordance with the laws in Wallace county, Kansas, but no copy of said mortgage or any reference to it was ever recorded in Jackson county, Missouri; also that the president of the bank had a personal note and mortgage on part of the live stock above mentioned to the amount of $9591.78; and that the indebtedness owed to the president was not the property of the bank; that in January, 1923, the defendant, Fogelstrom, told the president of the State Bank of Sharon Springs that he wanted to ship part of the sheep covered by the bank's mortgage to market in Kansas City; that Mr. Woodhouse, the president of said bank, consented to said shipment with the agreement with defendant Fogelstrom that the proceeds from the sale of the sheep were to be deposited by the commission company selling the same, to the credit of the State Bank of Sharon Springs at the Drover's National Bank of Kansas City, Missouri.

"That defendant, Fogelstrom, shipped 288 sheep which were part of the sheep covered by the mortgage above mentioned, in January, 1923, and that said sheep were consigned in the name of Walter Fogelstrom to the W. M. Leitch Sheep Commission Company, the garnishee, of Kansas City, Missouri; that said sheep came into the Kansas City market and were taken over for sale by the W. M. Leitch Sheep Commission Company; that this agreement was not communicated in any way to the Commission Company. The Commission Company was served with summons in garnishment in this case of Adamson v. Fogelstrom, after it had received the sheep and before they were sold.

1246

"That the depositions heretofore taken shall be submitted as evidence in this case.

"The case was not tried by the justice on the merits between plaintiff and defendant. The suit was by attachment and garnishment. Garnishee was served with notice of claim of the State Bank of Sharon Springs and contended that proceeds of the sheep in question belonged to said bank.

Mr. Woodhouse, president of the bank that held the chattel mortgage on the sheep, and the mortgagor, both testified that the understanding between mortgagor and mortgagee was that the mortgagor was to ship the sheep to Kansas City, Missouri, and sell them on the market there. Mr. Woodhouse testified that this arrangement was made about ten days before the sheep were shipped. The mortgagor testified that the arrangement was made some thirty days before the sheep were shipped and at that time he told Mr. Woodhouse that he expected to ship about January 15. The sheep were shipped on January 13 and arrived in Kansas City, Missouri, on the morning of January 15. This shipment was made to garnishee, a commission company of Kansas, Missouri, for sale, but before any sale was made the commission company was served with notice of garnishment.

Contention is made that under the statutes of Kansas the legal title to mortgaged personal property is in the mortgagee, and since the mortgage in question was executed in Kansas, its legal effect must be determined by the statutes of that State.

The difficulty with this contention is that the statutes of Kansas are neither pleaded nor proven. We cannot take judicial notice of them. [Mathieson v. St. Louis & S. F. Ry. Co., 118 S. W. 9, 219 Mo. 592; Coleman v. Lucksinger, 224 Mo. 1, 14, 123 S. W. 441.] Kansas not being a State in which we are authorized to indulge the presumption that the common law prevails, we must hold that the laws of this State govern the interpretation of the mortgage in question. [Witascheck v. Glass, 46 Mo. App. 209, 215.]

Appellant's second contention is that as title to the mortgaged property was in the mortgagee, the mortgagor and the commission company, garnishee, were acting as agents of the mortgagee in the shipment and sale of the sheep, therefore the principal's property could not be attached by a creditor of the agent.

There is no merit in this contention because under the law of this State, which is controlling in this case, the title to the mortgaged sheep was not in the mortgagee.

The rule in this State is that a chattel mortgage creates a lien on the property pledged, and the legal title as well as the right of possession to the property covered by the mortgage, before condition broken, is in the mortgagor. [Olean Milling Co. v. Tyler, 235 S. W. 186, 187, 208 Mo. App. 430.] No showing is made that any

of the conditions of the mortgage were broken or that the mortgagee took or attempted to take the sheep from the possession of the mortgagor. On the contrary he consented that the mortgagor might ship the sheep to Missouri for sale, and permitted the mortgagor to ship them in his own name. The mortgagor, before condition broken, having both the legal title and possession of the sheep, could legally sell them without the consent of the mortgagee, subject, of course, to the rights of the mortgagee. The mortgagee's consent does not go to the authority of the mortgagor to sell, but to the waiver of the lien.

It is contended that the mortgagee's consent to the removal of the sheep from Kansas, the *situs* of the mortgage, did not waive the lien. Authorities from other jurisdictions are cited in support of this contention. [Cobb v. Buswell, 37 Vt. 337; Shapard v. Hynes, 104 Fed. 1. c. 452; Creelman Lumber Co. v. Lech, 73 Ark. 16; Armitage-Hirschell Co. v. Potter, 93 Ill. App. 602, 83 S. W. 320; Handley v. Harris, 48 Kansas 606; In re Shannahan v. Dwightson Hdw. Co., 118 Atl. 599 (Del. 1922); Flora v. Julesburg Motor Co., 69 Colo. 238, 193 Pac. 545 (1920).]

Whatever the rule may be in other jurisdictions, no court in this State, so far as we know, has so held. There is authority in this State to the contrary. In Geiser Mfg. Co. v. Todd, 204 S. W. 287, 289, the Springfield Court of Appeals, speaking to a similar question, said:

". . . but an examination of these cases shows that there was no question about the mortgagee having given his consent for the removal of the mortgaged property from its *situs* when mortgaged in another State. The doctrine of comity applies only when the mortgaged chattel is moved from its *situs* without the knowledge or consent of the mortgagee; but we find no case in our State on this point."

This case also quotes approvingly from 11 C. J. the following:

"The great weight of authority is to the effect that a chattel mortgage, properly executed and recorded according to the law of the place where the mortgage is executed and the property is located, will, if valid there, be held valid even as against creditors and purchasers in good faith in another State to which the property is removed by the mortgagor, unless there is some statute in that State to the contrary, or unless the transaction contravenes the settled law or policy of the forum. In some jurisdictions this is held to be the rule without regard to the presence or absence of consent or knowledge on the part of the mortgagee as to the removal; but by the better authority it seems that, where the mortgagee has consented to the removal of the property, he will forfeit his right to a lien unless he takes such steps as are required for

its protection by the statutes of the State into which the property is removed.''

The mortgagee in this case made no attempt to preserve its right under the mortgage. It could have refused to consent to the removal of the property from the State of Kansas, or having consented, it could have preserved the validity of its lien by either recording the mortgage in this State, or by shipping the property in its own name. Speaking to a like question in Geiser Mfg. Co. v. Todd, supra, the court said:

''The mortgagee could refuse consent to move the property, or, if he consents, he could record his mortgage in the other jurisdiction. This seems to square with substantial justice, and we think is the general rule. [Newsum v. Hoffman, 124 Tenn. 369, 137 S. W. 490; Jones on Chattel Mortgages (5 Ed.) sec. 260a; Jones v. Fish Co., supra, 42 Wash. 332; 11 C. J. 425; Armitage-Herschell Co., et al. v. Potter, 93 Ill. App. 602; Kanaga v. Taylor, 7 Ohio St., 134, 70 Am. Dec. 62; Anderson v. Doak, 32 N. C. 295; Greene v. Bentley, 114 Fed. 112, 52 C. C. A. 60; Pennington County Bank v. Banman, 87 Neb. 25, 126 N. W. 654.]''

Appellant insists that under the law it was entitled to a reasonable time in which to record its mortgage after the property arrived in this State. 11 C. J. 426; Bryson v. Penix, 18 Mo. 13, and May v. Braley, 44 Mo. App. 457, are cited in support of this contention. These authorities do hold that a mortgagee in a chattel mortgage is entitled to a reasonable time in which to record such mortgage. This question was again before the Supreme Court in Wilson v. Milligan, 75 Mo. 41, 42, whereat the court said:

''Judge Scott, who delivered the opinion in the case of Bryson v. Penix, supra, observed that the statute prescribes no time within which such mortgages shall be recorded, and that under such circumstances a party must have a reasonable time for that purpose which is to be determined by the circumstances of each case; and where a deed is recorded within a reasonable time it has relation back to the time of execution. Conceding this doctrine to be authoritative for the purpose of this case, without giving it our sanction, looking at the facts disclosed by the evidence, that the mortgagee was in the county seat with free access to the recorder's office the day before he filed it for record, and having this opportunity to record it, not only failed to avail himself of it, but took it home with him, believing that it was not necessary to record it, plaintiff can take no benefit from the above principle.''

The record in the instant case discloses that the mortgagee had ample time to record its mortgage here, if it had so desired. The president of the bank testified that arrangements were made to ship and sell the sheep, ten days before the shipment was made. The mortgagor testified that such arrangements were made thirty days

before the shipment. Appellant knew that the sheep were shipped to the market for immediate sale. Knowing this, it was charged with knowledge that the right of creditors of the mortgagor or innocent purchasers might attach at once. In this situation, if appellant desired to preserve the lien of its mortgage, it should have taken the necessary steps so to do, before or at the time the shipment was made.

Contention is made that mortgagee's consent to a sale of the sheep, did not waive the lien, because such consent was given on condition that the proceeds of the sale should be credited on the mortgage debt, which was not done. The rule is that where the mortgagee's consent to a sale of the property is given on condition, the failure of the mortgagor to comply with the condition will not affect the rights of persons who have no knowledge of such condition. [Oklahoma Cattle & Loan Company v. Wright & Mason, 219 Mo. App. 157, 161 and cases cited.] There is no evidence that plaintiff knew of the arrangements between the mortgagees and mortgagor relative to the shipment and sale of the sheep, or the condition upon which the mortgagee's consent to sell was given.

Contention is also made that the mortgagee's consent that the mortgaged property might be sold, would not waive the lien prior to an actual sale thereof. If, as heretofore held, the removal of the property from Kansas, the *situs* of the mortgage, with the consent of the mortgagee, waived the lien, there was no lien on the property, after its removal, either before or after the sale.

Appellant finally insists that where a mortgagee consents that the mortgagor in possession, may make an absolute sale of the mortgaged property, such consent is not a waiver of the lien except as to innocent purchasers, who in good faith part with their money, believing the property is unincumbered.

From this contention, it is argued that plaintiff is a pre-existing creditor and was not induced to and did not part with anything of value by reason of any act of the mortgagee in consenting to a removal and sale of the property, and for this reason, the mortgagee's consent to such removal and sale was not a waiver of the lien as to him. It must be conceded that a nonresident's unincumbered property is subject to attachment at the suit of a creditor, and, if as heretofore held, the removal of the sheep from Kansas, the *situs* of the mortgage, with the mortgagee's consent, was a waiver of the lien, then there was no lien on the property upon its arrival in this State, and it was subject to attachment by a creditor of its owner.

We find no reversible error in the record and therefore affirm the judgment. *Williams, C.*, concurs.

1250

PER CURIAM:—The foregoing opinion by FRANK, C., is hereby adopted as the opinion of the court. *Bland* and *Arnold, JJ.,* concur; *Trimble, P. J.,* absent.