CUNNINGHAM et al. v. G. F. C. CORP.—244
S. W. (2d) 181.

Western Section.   March 5, 1951.

Petition for Certiorari denied by Supreme Court, October 9, 1951.

238

Davis & Davis, of Memphis, for plaintiff in error.

Taylor & Quick, of Memphis, for defendant in error.

ANDERSON, P. J.   This was a replevin suit involving the right to the possession of three automobiles.  A trial before the judge without a jury resulted in a judgment for the original plaintiff, G. F. C. Corporation, and the defendants, Roy Manley, Gus Manley and Tom Smith, were granted an appeal in error.  Though named in the writ as a party defendant, Lon Cunningham was not served with process; nor did he enter an appearance or participate in the trial.  However, his deposition was taken and read by the defendants.

The plaintiff, G. F. C. Corporation, a Delaware corporation doing business as a finance company in St. Louis, Missouri, claims the right to possession by virtue of a breach by the mortgagor, Lon Cunningham, of a chattel mortgage on the cars, in which it was named as mortgagee and which was executed and duly recorded in the

state of Missouri. The defendants other than Cunningham claim that they are bona fide purchasers for value; that if the plaintiff ever had any mortgage lien on the cars, it was waived by the fact that the mortgagor was allowed to retain possession and sell them in the usual course of business and by a course of conduct on the part of the mortgagor.

Lon Cunningham, for a number of years had a used car business in St. Louis, Missouri. The defendant, Roy Manley, conducts a used car business in Kennett, Missouri, and the defendants, Gus Manley, a nephew of Roy Manley, and Tom Smith, conduct similar businesses in the city of Memphis.

For some two and a half years the plaintiff had financed Cunningham in the purchase of automobiles. This was done under what is known as a floor-plan arrangement. Under this plan, Cunningham bought cars for resale inside and outside the state of Missouri. Upon completing a purchase, or purchases, he would draw a draft on the finance company for the amount needed to defray the purchase price. Later mortgages on the vehicles were executed by Cunningham to secure the amount thus advanced. Frequently, a number of automobiles were scheduled in one mortgage. Under this arrangement Cunningham had a line of credit with the plaintiff up to $40,000, and had a substantial business in St. Louis, buying and selling some 200 to 300 cars per year.

The mortgages including those involved in the present case, permitted the mortgagor to keep the vehicles at his place of business where they were displayed for the purpose of being sold. But they contained a provision that the "mortgagor * * * covenants and agrees not to remove the property from the place of business indicated above (mortgagor's place of business), nor use

it illegally, improperly or for hire, nor transfer any interest therein without prior written consent of the mortgagee or without accounting to the mortgagee for the proceeds of any transfer; *   *   *''

There is, or was at the time, what is called a car auction block or car auction lot in DeSoto County, Mississippi, near Memphis, Tennessee, where an auction for the sale of automobiles was held on Thursday of each week. Only automobile dealers could put cars in the auction to be sold, but others as well could make purchases. This seems to have been a well established and well known enterprise, and each sale was largely attended by car dealers from several states. Both Cunningham and Roy Manley appear to have been regular patrons of the auction.

On or about Tuesday, June 7, 1949, Cunningham removed six mortgaged cars from his lot in St. Louis, among them being the three in question, and caused them to be transported to the auction car lot in Mississippi. It was his purpose to put them through the auction to be held on June 9, 1949. Before the auction began, however, he sold five of the cars to the defendant, Roy Manley, who was present for the purpose of attending the auction along with a number of other dealers. The aggregate amount paid for the cars was $7800, and there is no contention that this was not an adequate price.

Following his purchase, Manley caused the five cars to be put through the auction. One was sold to a resident of Greenwood, Mississippi, and so far as the record reflects, is still in that town. Another was sold to a resident of Arkansas and so far as appears has not been taken from the purchasers. Neither is involved in the present litigation. One of the remaining three was sold

to the defendant, Gus Manley, who as said, conducts a used car business in Memphis, and the other two were sold to the defendant, Tom Smith, who is engaged in a similar business in the same city. Roy Manley's net profit on the whole transaction was $110.

Gus Manley and Smith took the cars purchased by them to Memphis, where they were taken from them under the replevin writ sued out in this case. Learning of this and feeling responsible to his vendees, Roy Manley, by stipulation with the plaintiff, deposited with the clerk of the lower court the sum of $4900 to stand in lieu of the cars. Upon the deposit being made, the vehicles were turned over, one to the defendant Gus Manley, and the other two to the defendant Smith.

Cunningham did not account to the plaintiff mortgagor for the proceeds of the sale. On the other hand, he seems to have decamped, abandoning his business in St. Louis and accepting employment with a firm in Ft. Lauderdale, Florida, where he was located at the time his deposition was taken.

■ It may first be noted that in Missouri a chattel mortgage creates merely a lien on the mortgaged property. The legal title, as well as the right to possession of the property, prior to a breach of any of the conditions of the mortgage, is in the mortgagor. Adamson v. Fogelstrom, 221 Mo. App. 1243, 300 S. W. 841.

While, in the view we have of the case, we do not think the question of whether the defendants were innocent purchasers is material in a determinative sense, it is well enough to say that neither of the defendants, Manley and Smith, knew or had any reason to know or suspect that the cars were encumbered by a mortgage or that Cunningham, being obligated to do so, did not

intend to account to the plaintiff for the proceeds of the sale.

As succinctly stated in the brief, the plaintiff's contention is "that the chattel mortgages under which it claims title to the automobiles here involved were regularly executed and recorded, and that they are in all things valid and enforceable instruments under the laws of Missouri; that when the automobiles in question were removed from the State of Missouri without the permission of plaintiff and sold without accounting for the proceeds of sale, the terms of said mortgages were violated, entitling plaintiff to possession of said automobiles".

■ It may be conceded that, as the plaintiff contends, the rule supported by the weight of authority and resting on comity, is that a mortgage properly executed and recorded at the place where it was executed and the property is located, will, if valid there, be held valid, even against creditors and purchasers in good faith in another state to which the property is removed by the mortgagor, in the absence of any statutory prohibition or controlling principle of equity. Blashfield on Automobile Law and Practice, Vol. 7-a, Sec. 4710. The rule is followed in this jurisdiction. Newsum v. Hoffman, 124 Tenn. 369, 137 S. W. 490; Bankers Finance Corp. v. Locke & Massey Motor Co., 170 Tenn. 28, 91 S. W. (2d) 297. It also prevails in Missouri. Nat'l Bank of Commerce v. Morris, 114 Mo. 255, 21 S. W. 511, 19 L. R. A. 463; Finance Service Corp. v. Kelly, Mo. App., 235 S. W. 146.

With this rule in mind, the plaintiff insists that whatever may be the rule in this jurisdiction, that prevailing in Missouri is that, where the mortgage contains a covenant by the mortgagor to account to the mortgagee for

the proceeds of a sale of the mortgaged property, said proceeds to be applied to the debt, then the fact that the mortgagor remains in possession of the property and is given the power to sell it in the ordinary course of business, does not render the mortgage fraudulent and void as against creditors or purchasers. For this statement of the rule we are referred by the plaintiff to the cases of Rock Island National Bank v. Powers, 134 Mo. 432, 34 S. W. 869; Rock Island National Bank v. Western Lumber Co., 134 Mo. 432, 35 S. W. 1132; Dunham v. Stevens, 160 Mo. 95, 60 S. W. 1064; State ex rel. Kennan v. Fidelity & Deposit Co., 94 Mo. App. 184, 67 S. W. 958; Embree v. Roney, 152 Mo. App. 257, 262, 133 S. W. 83; Osborn v. Standard Security Co., 222 Mo. App. 1186, 4 S. W. (2d) 503. We think none of them is in point. None holds that, in the circumstances stated, the mortgage lien can be enforced against a purchaser from the mortgagor where the mortgagee expressly or impliedly consents to the sale of the mortgaged property.

In our view, the law applicable to the determinative issue is the same in Missouri as it is in Tennessee and a majority of the other jurisdictions. This issue is not whether the mortgage is fraudulent and void per se as to the *creditors* of the mortgagor, but whether, as to a *purchaser* from him, the mortgagee, by the terms of the mortgage, express or implied, waived the lien of the mortgage. The two are quite different things and the plaintiff's difficulty lies in the fact that it has failed to make the distinction.

■ This is apparent from the cases it relies upon. With one exception they all deal with the rule applicable to the rights of creditors of a mortgagor who is allowed to retain possession of the mortgaged property and is given the power to sell it in the ordinary course of

business. They hold that where there is in addition a provision that the mortgagor should account for the proceeds of the sale, the mortgage is not fraudulent as to his creditors and that seems to be the rule in Missouri. The exception is Osborn v. Standard Security Co., 222 Mo. App. 1186, 4 S. W. (2d) 503. But that case is of no help to the plaintiff because the decision turned upon the fact that neither in the mortgage or otherwise, had the mortgagee given his consent to the sale of the mortgaged property.

■ In the present case, consent that the mortgagor should sell the mortgaged property and receive the proceeds is clearly implied from the latter's covenant to account to the mortgagee for the proceeds of the transfer of any interest in the mortgaged property, considered in the light of the circumstances and the course of dealing between the parties. St. Louis Drug Co. v. Robinson, 81 Mo. 18; Moffett Bros. & Andrews Comm. Co. v. Kent, Mo. Sup., 5 S. W. (2d) 395; Stock Yards National Bank etc. v. B. Harris Wool Co., 316 Mo. 426, 289 S. W. 623.

■ Where this is the case the applicable rule recognized in the majority of the jurisdictions, including Missouri and Tennessee, is that such consent, when acted upon, constitutes, as to the purchaser, a waiver of the lien of the mortgage. This rule was applied in this jurisdiction in the early case of Hoskins v. Carroll, 15 Tenn. 505. Many cases from other jurisdictions to the same effect, including a number from Missouri, are cited in the annotation appearing 97 A. L. R. 646, et seq.

■ When, in such cases, the sale occurs there is a release of the lien even though the mortgagor fails to account as required by his covenant, and it is immaterial whether the purchaser had actual or constructive knowledge of the existence of the mortgage or the mortgagee's

consent to the sale, for the mortgagee is regarded as having made the mortgagor his agent in the sale and in effect accepted his promise to account in the place of the security of the mortgage. Mitchell v. Mason, 184 Ark. 1000, 44 S. W. (2d) 672; Vaughan v. Hinkle, 131 Ark. 197, 198 S. W. 705; Williamson v. Lesser-Goldman Cotton Co., 169 Ark. 1212, 277 S. W. 347; Goldberg v. Britton, 119 Ind. App. 90, 84 N. E. (2d) 201; Van Sant v. Austin-Hamill-Hoover Live Stock Commission Co., 221 Mo. App. 1096, 295 S. W. 506; Cudd v. Rogers, 111 S. C. 507, 98 S. E. 796; Luther v. Lee, 62 Mont. 174, 204 P. 365; Stockyards National Bank v. B. Harris Wool Co., 316 Mo. 426, 289 S. W. 623; Moffett Bros. & Andrews Comm. Co. v. Kent, Mo. Sup., 5 S. W. (2d) 395; Rogers v. Davis, 194 Mo. App. 378, 184 S. W. 151; United Film Ad. Service v. Roach, 222 Mo. App. 339, 297 S. W. 91; Adamson v. Fogelstrom, 221 Mo. App. 1243, 300 S. W. 841; State ex rel. Cantley v. Akin, 224 Mo. App. 114, 22 S. W. (2d) 836; Helms v. American Security Co., 216 Ind. 1, 22 N. E. (2d) 822; Minneapolis Threshing Machine Co. v. Calhoun, 37 S. D. 542, 159 N. W. 127.

It is different where the consent to a sale is accompanied by an agreement that the mortgagee will release his mortgage upon certain conditions, for in that case the mortgagee does not consent to sell free of the mortgage, but merely to release the lien upon the conditions being met. That was the situation in the case of Osborn v. Standard Security Co., Mo. App., supra, relied upon by the plaintiff.

These principles have been applied in the case of a mortgage on a stock of automobiles of which the mortgagor had the power of sale in the ordinary course of trade. 14 C. J. S., Chattel Mortgages, Sec. 262, p. 880; Howell v. Board, 185 Okl. 513, 94 P. (2d) 830; Rogers

County Bank v. Cullison, 186 Okl. 373, 98 P. (2d) 612; Owen v. Miller, 190 Okl. 205, 122 P. (2d) 140; Fogle v. General Credit, 74 App. D. C. 208, 122 F. (2d) 45, 46, 136 A. L. R. 814.

It appears to be the plaintiff's contention that the mortgage forbade that a sale be consummated without the concurrence of two things: (1) the prior written consent of the mortgagee, and (2) account to the mortgagee for the proceeds of the sale. As to the first, this requirement was never enforced. It is shown without dispute that the mortgagee never required that the mortgagor obtain its prior written consent for any sale, or for that matter, its prior verbal consent. As to the second proposition, the language is not susceptible of the construction that the requirement for an accounting was a condition precedent to the right to sell, or a limitation upon the power of the mortgagor to sell and convey a good title, free of the lien of the·mortgage. Upon the contrary, it has been construed to be, and clearly is, a provision imposing upon the mortgagor in the event of a sale, a duty to be performed subsequent thereto. General Credit Corp. v. Rohde, 122 Conn. 100, 187 A. 676. There could be no proceeds to account for until the sale had been consummated.

Moreover, the course of dealing shows that the parties themselves did not interpret the terms of the mortgage as meaning that an accounting for the proceeds was a condition precedent to the right to sell. It is true that the plaintiff's district manager who was the only witness testifying on the subject, said that the mortgagor was "supposed" to get in touch with the office of the mortgagee and first pay off the mortgage before consummating a sale, but he did not say that the mortgagor did what he was "supposed to do", and the other evidence

shows conclusively that such was not the practice. In the first place, the plaintiff's witnesses testified that Cunningham repeatedly sold and delivered cars without the written consent of the mortgagee and without first accounting for the proceeds. And it is nowhere even suggested that the mortgagee ever released the lien of record or otherwise prior to or contemporaneously with the sale as it was its duty to have done if the practice was that accounting for the proceeds of the sale was a condition precedent to a sale.

In addition, Cunningham testified that the plaintiff never made any objection to his making a sale without giving prior notice thereof to the mortgagee and that customarily he paid the mortgage debt on any cars sold in ''the due course of business'', explaining that by due course of business he meant, ''at our earliest convenience''. There is no serious contradiction of Cunningham's testimony in this respect.

But the plaintiff insists that whatever may have been true about the course of dealing between the parties, the defendants cannot rely upon it because they do not claim to have known of it, or for that matter, of the terms of the mortgage. The course of dealing was material only insofar as it shows the interpretation the parties themselves placed upon the terms of the mortgage; otherwise, under the particular facts of this case it is not a pertinent factor. In this connection able counsel for the plaintiff has failed to observe a proper distinction between the doctrine of equitable estoppel and that of waiver. Under the latter doctrine, applicable here, whether the party relying upon the waiver knew the facts from which the waiver results, is not a material question. Baird v. Fidelity-Phenix Fire Ins. Co., 178

Tenn. 653, 162 S. W. (2d) 384, 140 A. L. R. 1226; Cf. Livingston v. Stevens, 122 Iowa 62, 94 N. W. 925.

Unquestionably, the mortgage in the present case, if not expressly, then impliedly, gave the mortgagor an unlimited power of sale of the mortgaged property requiring only that he account for the proceeds, and under the authorities cited supra, there can be no doubt that as to a purchaser from the mortgagor, this amounted to a waiver of the lien of the mortgage.

The result is that the judgment is reversed and the suit dismissed and a proper judgment according to the practice in replevin cases will be entered in this court. The case is remanded to the lower court for any further proceedings that may be necessary, including a proper order directing the disposition of the fund now in the hands of the clerk, to be made in accordance with the views herein expressed. The costs are to be paid by the original plaintiff, G. F. C. Corporation.

Baptist and Swepston, JJ., concur.