### MERRITT VS. ROBINSON.

1. RESCISSION OF CONTRACT: *For fraud of vendor.*

When a vendor is guilty of fraudulent misrepresentation or concealment as to the essential inducement to a contract, the vendee may, on discovery of the fraud, rescind the contract. Fraud in all cases gives the defrauded party the right utterly to reject the contract; but the vendee must offer to rescind in a reasonable time after discovering the fraud.

2. FRAUD: *Selling mortgaged property.*

If a vendor sell goods which he knows to be mortgaged, without giving information thereof to the purchaser, the sale would be fraudulent. The suppression of the truth is equivalent to a falsehood, when the vendor is under obligation to disclose the truth.

3. SAME: *Perfecting title by fraudulent vendor.*

Fraud avoids a contract *ab initio*, and the party committing it can take no advantage of it, nor acquire any rights or interest by means of it. If, therefore, the vendor of mortgaged goods, knowing of the mortgage, conceal it from the vendee, the vendee may, on discovering the fraud, treat the contract as void, and rescind it by returning or offering to return the property and demanding that given in exchange for it; and the vendor can not defeat his right to rescind by afterward procuring a release of the property from the mortgage.

4. SUNDAY CONTRACT: *Offer to rescind on Sunday, void.*

An offer to rescind a contract on Sunday is void.

APPEAL from *Lincoln* Circuit Court.

Hon. J. A. WILLIAMS, Circuit Judge.

*Pierce,* for appellant.

*Cunningham,* contra.

ENGLISH, C. J. In September, 1877, J. W. Robinson brought replevin against James Merritt, before a justice of the peace of Lincoln county, for an iron-gray mule, two years old.

The defendant bonded the mule, and retained possession of it; there was a trial, verdict and judgment in favor of plaintiff, and defendant appealed to the circuit court.

In the circuit court, the case was submitted to the court, sitting as a jury, and the court found as follows:

"Upon the facts and law in the case, the court, sitting as a jury, finds that the plaintiff is entitled to the possession of the property mentioned in the order of delivery, that the value thereof is $40, and that he have nothing for his damages.            JOHN A. WILLIAMS, Judge."

Judgment was accordingly rendered against defendant, and H. A. Pierce and Thomas J. Dutter, his sureties in the appeal bond, for the mule if to be had, and, if not, for $40, its value as fixed by the court, and for costs.

The defendant moved for a new trial, which was refused by the court, and he took a bill of exceptions and appealed to this court.

On trial, Robinson, the plaintiff, testified in substance as follows:

"I am the owner of the mule claimed in this action. It is my property, and is worth $40, etc. I swapped the mule to defendant for a blue pony; gave the mule into his possession freely and gave him a good title, all the title I had, and I owned and have raised the mule. I have the horse now defendant traded me for the mule. No one is claiming the horse, and no one has ever claimed it from me. I have worked the horse since this suit was brought, and have conditionally sold him. When I traded with defend-

ant I asked him if there was any mortgage or lien on the horse, and I think he said there was no mortgage, that the title was clear. I am quite certain he said there was no mortgage on the horse. I found out afterwards that H. A. Pierce had a mortgage recorded on the horse, and when I found this out I sent Mr. Harrison with the pony to defendant, and told him to bring back the mule, but he did not get him, and I then brought this suit. Gave Harrison no written authority; sent him on Sunday morning; and this was the only offer I made to return the pony to defendant before bringing suit."

J. D. Harrison, witness for plaintiff, testified in substance as follows:

"I took the pony from plaintiff to defendant in last August (1877) and told him I had brought back the pony and come after the mule. He said he did not trade that way, that when he made a trade he made it to stick. I told him Mr. Robinson had found out that there was a mortgage on the pony, and defendant said he had given the old man a good title to the horse, and would see that he had no trouble; that he would go and see Pierce, and be down next day and fix things all right. I did not tell him I was the agent of Robinson. I had no written authority, and went at no other time than the Sunday mentioned."

Plaintiff then introduced a mortgage executed by defendant to H. A. Pierce, twelfth of July, 1877, upon a blue pony, three cows and calves, and a heifer, to secure a note for $50, due first of November following, given by defendant to Pierce for the pony, which mortgage appears to have been duly acknowledged and filed for registration in the recorder's office of Lincoln county, the thirteenth of July, 1877.

Merritt vs. Robinson.

Defendant Merritt testified in substance as follows:

" Some time last summer (1877) I traded a horse pony to plaintiff for the mule in controversy.  When we traded he asked me if there was any mortgage or lien on the pony, and I replied that I would give him a good title to the horse, that he should have no trouble with the title.  I do not think I told him there was no mortgage on the horse. I considered that I was giving him a good title, for I had agreed with Mr. Pierce, the mortgagee, that I might trade the pony, and he had permitted me to trade him if I got a good opportunity.  I made this agreement with Mr. Pierce the same day, and a short time after making the mortgage, and knew I was giving plaintiff a good title.  I never knew that Harrison was agent for plaintiff, or had any authority to act for him.  Harrison came to me on Sunday with the pony and wanted the mule, and I refused to let him have him.  Plaintiff has never offered to return the pony to me, nor did he ever demand the mule of me, nor has any one done so, so far as I know, who was acting for him."

H. A. Pierce, witness for defendant, testified, in substance, as follows:

"In July, 1877, I sold the pony to defendant, and took a mortgage on him and other property to secure payment. Half an hour after the mortgage was executed, I gave defendant permission to sell or trade the pony, if he had a good chance and would supply the place of the pony with any other property he might trade for.  I had confidence in his judgment as a trader and was willing for him to exchange the pony for other property.  After he traded with plaintiff, and before the issuance of the alias summons in this case, I had released all claim to defendant, and he had given me a mortgage on the mule in controversy, which was filed in the clerk's office at that time, and I so informed

plaintiff; and that I had given permission to defendant to trade, and that I had no claim on the pony he had received."

Defendant also introduced a mortgage executed by him to Pierce, bearing date September 25, 1877, by which, in consideration of. the release of the pony from the first mortgage, he conveyed to Pierce the mule to secure the payment of the note given for the pony. This instrument appears to have been acknowledged on the first, and filed in the recorder's office on the fifth of October, 1877.

Plaintiff moved the following declarations of law, which the court made, against the objection of defendant:

" 1. If defendant mortgaged property to Pierce, and afterwards traded the same property to plaintiff for the mule sued for in this action, and plaintiff was ignorant of the mortgage at the time of the exchange, this was a fraud upon plaintiff, and defendant acquired no property in the mule.

" 2. A contract in writing can not be varied by a cotemporaneous parol agreement, and if the contract was changed by parol, it must, to be valid, have been changed after the making of the written contract at a time so remote as to form no part of the res gestæ, and defendant must show this.

" 3  In order to change the written contract to make it conform to the parol agreement, the defendant must prove that everything had been done on his part which had been agreed to be done before the contract is changed to conform to the parol agreement.

" 4. If plaintiff asked defendant, if there was any mortgage lien on the property traded to plaintiff by defenddant, and defendant answered there was nothing to interfere with the title of the plaintiff, and there was at that

time a valid mortgage on said property, this was a fraud perpetrated upon plaintiff by defendant which invalidates the trade, and gave the defendant no title to the property."

Defendant asked the court to make eight declarations of law, of which the court refused the first, third, fourth, sixth, seventh and eighth.

The declarations, as asked, follow:

"1. Before plaintiff can recover in this action, he must prove that the consideration for which he parted with his property has failed, in whole or in part. *Overruled.*

"2. This being an action to recover personal property, upon a rescission of a contract of sale or barter, before the plaintiff can recover, he must prove that he offered to return the property to his vendor, and place him in the same position he was before the sale, and, unless this is proven, the verdict should be for defendant. *Made.*

"3. If the defendant was authorized by Pierce, the mortgagee, to trade the horse, and Pierce ratified and consented to the trade with plaintiff, plaintiff can not recover. *Overruled.*

"4. Before plaintiff can recover in this action, he must show that there is an outstanding claim against the property received by him, of superior title to that given him by defendant, and that his right and title to said property is threatened by such title. *Overruled.*

"5. If plaintiff claims to have made an offer of return of the property by an agent acting for him, he must show that such agent was authorized to act in the matter, and that a knowledge of such agency was brought to the notice of defendant at the time such offer was made. *Made.*

"6. An offer made on Sunday to return the property was illegal and void, and is not such as would bind defendant. *Overruled.*

" 7. If plaintiff received all he bargained for from defendant, holds the same now, and no one has claimed or does claim an interest in what he received, he can not recover in this action. *Overruled.*

" 8. If plaintiff asked defendant if there was a mortgage on the horse, and defendant informed him that he would see that he should not have any trouble with his title to the property, it was no fraud, and plaintiff can not complain of his action, even if there was a mortgage filed of record." *Overruled.*

The grounds of the motion for a new trial were:

That the court erred in making the first, second and third declarations of law moved for plaintiff.

And in refusing to make the first, third, fourth, sixth, seventh and eighth declaration of law asked for defendant.

And that the finding of the court was contrary to law and the evidence.

I. Where the vendor is guilty of fraudulent misrepresentation, or concealment as to the essential inducement to the contract, the vendee would, on discovery thereof, have a right to rescind the contract, although no special agreement were contained therein authorizing him to rescind; for fraud, in all cases, gives the party defrauded a right utterly to reject the contract. *Story on Sales, sec. 420; Hilliard on Sales, p. 326; Strayhorn v. Giles, 22 Ark., 521.*

But if the vendee elect to rescind the contract, on discovering the fraud, he must offer to do so within a reasonable time. *Ib.*

If a vendor sells goods which he knows to be mortgaged, without giving information thereof to the purchaser, the sale would be considered as fraudulent. (*Story on Sales, sec. 181; Arnott v. Biscoe, 2 Vesey, 95.*) Appellant should have made known to appellee, when he swapped him the

*Marginal notes:*

1. RESCINDING CONTRACT: For fraud of vendor.

2. FRAUD: Selling mortgaged property.

pony for the mule, that the pony was under mortgage to Pierce. Fair, honest dealing required this. The suppression of the truth is equivalent to falsehood, when the vendor is under obligation, as he was in this case, to disclose the truth. *Hilliard on Sales, p. 326.*

If appellant had frankly told appellee at the time of the swap, that the pony was mortgaged to Pierce, as he should have done, but that he had permission from Pierce to trade the pony, and appellee had thought proper to make the exchange of animals after being so informed, then there would have been no fraud in the transaction on the part of appellant.

The first and third declarations of law made by the court below, on behalf of the plaintiff, were substantially correct. The second was abstract. There was no attempt to vary the terms of the written contract between appellant and Pierce by a cotemporaneous parol agreement, but there was proof that after the mortgage had been executed Pierce gave appellant permission to trade the pony covered by the mortgage. If this had been made known to appellee at the time of the swap, he might not have been willing to take the risk of enforcing the agreement between appellant and Pierce. If Pierce had been present when the swap was made, and consented to it, he might have been estopped from afterwards setting up title to the pony, under the mortgage, as against appellee. His subsequent ratification of the swap, and release of the pony from the mortgage, perfected the title of appellee, but we shall presently see whether that defeated his right to rescind, on discovery of the fraud, or his cause of action.

3. ——: Perfecting title by fraudulent vendor. II. The writ of replevin (order of delivery as it is called in the Code) was issued on the twenty-fourth day of September, 1877, and on the same day the constable seized the

mule, and appellant executed a bond to retain possession of it. On the return day, appellant moved to quash the summons, on the ground that it had not been served on him, and the justice of the peace ordered an alias summons, which appears to have been issued on the fourth of October, 1877, and returned served.

In the meantime, on the twenty-fifth of September, appellant procured Pierce to release the pony from the mortgage and take a mortgage upon the mule.

Appellant could not defeat appellee's right of action for the mule by procuring the pony to be released from the mortgage after the commencement of the suit.

Moreover, fraud avoids a contract *ab initio,* and the party committing it can take no advantage of it and acquire no right or interest by means thereof. *Strayhorn v. Giles, 22 Ark., 517.*

If, therefore, appellant perpetrated a fraud on appellee by concealing, or failing to make known to him, the fact that the pony was under a mortgage when the swap was made, appellee had the right, on discovering the fraud, to treat the contract as void, and to rescind it by returning, or offering to return, the pony, and demanding his mule, and appellant could not defeat his right to rescind by afterwards procuring the release of the pony from the mortgage.

The court did not, therefore, err in refusing to make the first, third, fourth, seventh and eighth declarations of law moved for appellant.

But the court erred in refusing to make the sixth declaration of law moved for appellant.

Sunday is not a business day, and appellee having made no other offer to return the pony to appellant and take back his mule, than that made on Sunday, the offer was

illegal, null and void. (*Tucker v. West et al., 29 Ark., 387.*) And appellee could not maintain replevin for the mule until he made a valid offer to return the pony.

For this error appellant was entitled to a new trial. Reversed.