## FINCHER *v.* BENNETT.

### Opinion delivered March 7, 1910.

MORTGAGEES—PAROL RELEASE.—Where a mortgagee verbally authorizes the mortgagor to sell the mortgaged property, and the property is sold to a *bona fide* purchaser for value, he acquires a good title, whether he knew of the existence of the mortgage or not.

Appeal from Columbia Circuit Court; *George W. Hays,* Judge; affirmed.

*H. S. Powell* and *W. H. Askew,* for appellant.

The burden was on the defendant to prove the release of Parker on the part of the bank.   Even acceptance by a creditor of the note or bill of a third party for the debt does not dis-

charge the debtor unless especially so agreed by the parties. 45 Ark. 313, 317; 46 Ark. 163, 166. No express release of Parker by the bank is proved.

*Stevens & Stevens,* for appellee.

FRAUENTHAL, J. This was an action of replevin instituted by the appellant against the appellee for the recovery of a mule. On May 7, 1907, one J. W. Parker, being indebted to the Bank of Waldo, executed to said bank a note for $250 due four months after date with J. C. Love as surety thereon, and on the same day, in order to secure the payment of the note, said Parker executed to the bank a deed of trust on two mules. On May 18, 1907, Parker became indebted to said bank in the additional sum of $395, and on that day executed a second note for that sum to the bank with said Love as surety thereon, payable three months after date, and on the same day, in order to secure this second note Parker executed to the bank a deed of trust on two additional mules and a wagon; and one of the mules conveyed by this second deed of trust is involved in this suit. J. C. Love was a merchant at Waldo, solvent and in good financial condition, and with a good credit with said bank. Parker was doing business with said Love; and about September 28, 1907, Love was indebted to him in the sum of $218. At that date, through the active assistance of said Love, Parker contracted to sell to one Flaherty two of the above mules and the wagon for $460. The evidence on the part of the appellee tended to prove that Parker then made the following agreement with the cashier of the bank relative to his notes and deeds of trust to the bank: that the bank would accept the notes of Flaherty for $460, which should go in payment on the notes of Parker to the bank; and Parker further testified that he told said cashier that he had to his credit with said Love $218, and that he would also apply that sum to the credit of his notes, and that these two sums were enough in amount to pay off his two notes to the bank; that the said cashier agreed to accept the notes of Flaherty and the amount on deposit with Love in full payment of the Parker notes to the bank, and that he would send these notes to Parker upon receiving the Flaherty notes. He also testified that he spoke to the cashier relative to selling the property covered by the deeds of trust, and that the cashier stated

that he would release the property from the deeds of trust when the bank should receive the notes executed by Flaherty, and told him to go ahead and sell the property. Thereupon Parker sold to Flaherty the wagon and two mules, one of which was included in each deed of trust; and Flaherty executed his notes for the $460, which were received and accepted by the bank; and after this Parker sold the remaining mule, covered by the deed of trust dated May 18, 1907, to one J. B. Bass, who paid him full value therefor; and thereafter Bass sold this mule to appellee; and it is this mule only that is involved in this litigation. There was a conflict in the evidence as to what occurred between the cashier of the bank and Parker at the time of said alleged agreement relative to the release of the property. The cashier testified that, while he agreed to accept the Flaherty notes and the deposit with Love in payment of the notes given by Parker, he only agreed to do so when he should receive the notes and also the payment from Love.

The appellant's testimony tended to show that Love did not make the payment to the bank, and that the bank, upon advice of its attorney, credited parts of the Flaherty notes on each of the Parker notes, and thus left a balance unpaid on each of those notes. But the uncontradicted evidence shows that at the time of the alleged agreement of release the said Love did owe to Parker said sum of $218, that Love was surety on the Parker notes to the bank, and that Love had sufficient financial credit with the bank for it to accept him as payer of the amount which he owed Parker; and we think that there is some evidence tending to prove that the cashier did accept these Flaherty notes and the indebtedness of Love to Parker in settlement of the notes of Parker to the bank, and did release the property from the deeds of trust, and did authorize Parker to sell the property covered by these deeds of trust; and that this evidence was sufficient to sustain a finding of a jury to that effect.

The court instructed the jury relative to this issue as follows:

"The jury are instructed that, before they can find for the defendant, Bennett, you must believe, by a preponderance of the evidence, that Ivie Howell, as cashier of the Bank of Waldo, unconditionally released the lien of the deed of trust from Parker to the bank. It is not sufficient that said cashier agreed to

release the property from the lien and forward the notes held by the bank to Parker within a few days if Love paid the bank. This would not amount to a release of the lien held by the bank.

"The jury are instructed that one of the elements of a binding contract is that the minds of the contracting parties shall meet as to the terms thereof. And so, in this case, the burden is on the defendant to show that the bank released unconditionally the lien of the deed of trust, and it is not sufficient that Parker understood that the lien was released, but it must also be shown by a preponderance of the evidence that Ivie Howell, cashier of the Bank of Waldo, so understood it at the time.

"The court instructs the jury that if they believe from the evidence that at the time J. C. Love and Clay Flaherty bought the team from J. W. Parker for $460 the said J. W. Parker had on deposit at J. C. Love's store the sum of $218, and if they believe from the evidence that J. W. Parker notified Ivie Howell, the cashier of the Waldo Bank, of the sale of the team for $460 and of the deposit at Love's store, and that the said cashier accepted these amounts at the places named, they will find for the defendant."

The question involved in this case is essentially one of fact. The title to personal property may be transferred by a parol agreement. The conveyance of the title to personal property by a mortgage or deed of trust is in effect only a security for a debt. Such property may be released from the mortgage or deed of trust by a sufficient parol agreement. And where the mortgagee authorizes or gives consent to the mortgagor to sell the mortgaged property, the mortgage lien thereon is discharged. Under such circumstances, a *bona fide* purchaser for value from the mortgagor obtains a good title to the property, whether he knew of the existence of the mortgage or not. Jones on Chattel Mortgages (5 ed.), § § 660, 661, 465; *Wallis* v. *Long,* 16 Ala. 738; *Acker* v. *Bender,* 33 Ala. 230; *Conkling* v. *Shelley,* 28 N. Y. 360; *Hicks* v. *Ross,* 71 Tex. 358.

Whether or not the evidence is sufficient to sustain such an agreement of release or discharge or authorization to sell the property covered by the deed of trust is a matter purely for the jury to determine. If there is some evidence to sustain the

finding of the jury to that effect, under the repeated rulings
of this court, the verdict of the jury should not be disturbed.
    The judgment is affirmed.