## BOREN *v.* BETTIS.

Opinion delivered April 30, 1917.

1. SALES—TRADE OF ANIMALS—WARRANTY—AGREEMENT TO RELEASE MORTGAGE.—Where appellant traded a mule to appellee for a horse, stipulating that the horse be clear of any encumbrance, and appellee warranting that the horse was clear, appellant was entitled to an unencumbered horse, and where the same was mortgaged, appellee will be held to have broken his warranty, although the mortgagee promised to release the mortgage.

2. SALES—TRADE OF ANIMALS—MISREPRESENTATION—RESCISSION.—Where appellant traded a mule to appellee for a horse, and appellee made a misrepresentation of a material fact concerning the horse, which was relied upon by the appellant, and understood by the parties as an absolute assertion concerning the title to the horse, appellant's right to rescind the trade is a question for the jury.

3. CONTRACTS—MISREPRESENTATIONS—RESCISSION.—Fraud in the procurement of a contract gives the party defrauded a right to utterly reject the same; and when a vendor is guilty of fraudulent mis-

representations, or concealment as to the essential inducement to the contract, upon discovery, the vendee may rescind the contract, although the contract contained no special authorization for a rescission.

Appeal from Crawford Circuit Court; *James Cochran,* Judge; reversed.

*C. A. Starbird,* for appellant.

It was error to give the second and fifth instructions. The second left out of consideration the mortgage and false representations. The fifth expressly directs the jury to disregard the mortgage and the misrepresentations concerning it. The mortgage was never released. The judgment should be reversed for these errors. Appellant had a right to rescind, and this right should have been submitted to the jury by proper instructions.

SMITH, J. Bettis owned a horse, which he traded to Boren for a mule. According to Boren, the trade was induced by Bettis' false representation and warranty that the horse "was sound and clear of mortgage," when, in fact, the horse was not sound, and was mortgaged to the Commercial Bank of Crawford County. Bettis denied that the horse was unsound, or that he had made any warranty in regard to its soundness. He admitted it was under mortgage, but stated that the cashier of the bank had given him permission to trade the horse, and that he advised Boren of this fact before the trade. Boren denied that he had any knowledge of the mortgage until after the trade, and testified that, upon being so advised, he asked the cashier of the bank about the mortgage, and that officer told him the bank did have a mortgage on the horse, but would release it. The mortgage had not been released at the time of the trial in the court below. Boren testified that the horse was wind-broken and worthless, and that, upon discovering this fact, he carried the horse to Bettis' house, and turned him loose there. That his mule returned to his lot, and he took it up and had it in his lot when Bettis brought this suit in replevin to recover its possession.

The court submitted the cause to the jury, over appellant's objection, upon the single issue of the soundness of the mule, and, over appellant's objection, gave the following instruction:

"The defendant, James Boren, admits that the cashier of the Bank of Alma told him that he had given Bettis permission to trade the horse, and, the bank making no claim for the horse, you are, therefore, directed by the court not to consider the matter of the mortgage in making up your verdict."

There was a verdict and judgment for the plaintiff.

It is argued, as ground for the reversal of the judgment, that the court erred in giving the instruction set out above. This instruction is attacked upon two grounds. The first is, that it does not correctly state Boren's position, as he did not admit that the cashier had given Bettis permission to trade the horse, nor did he admit that the bank made no claim to the horse; that his admission was, that the cashier told him, after the trade, that he would release the mortgage, but that the cashier did not tell him that he had given Bettis permission to trade the horse. The second objection is, that the instruction withdrew from the jury any consideration of the falsity of the warranty against encumbrances.

(1) It appears that the instruction does not correctly state the position of appellant. It was Bettis, and not Boren, who testified that the cashier had given Bettis permission to trade the horse. Boren testified that he traded for a "clear horse," and this he did not get. While he did admit that the cashier told him he would release the mortgage, the mortgage had not been released. Boren had the right to demand a warranty that the horse be not mortgaged, and this he said he did. If there was a representation that the horse was not mortgaged, it was false, and a subsequent promise of the cashier to release the mortgage, which appears to have been made without consideration, does not satisfy the warranty. Boren's right to an unencumbered horse was not discharged by

the cashier's promise to thereafter satisfy the mortgage, which Bettis had said did not exist.

This case is not controlled by the case of *Mason* v. *Bohannan,* 79 Ark. 435. There it was said that the remedy for the breach of an express warranty against encumbrances, in the absence of fraud or concealment of fact, is to sue for the amount of damages sustained by reason of such encumbrances. That case was an action in replevin for a horse, brought upon the theory that a breach of a warranty against encumbrances entitled the purchaser to rescind the contract. But it was undisputed there that the purchaser knew of the encumbrance, and the issue of fact was, whether there was a warranty against this encumbrance. Here there is an allegation of fraud and concealment, and the affirmative statement is made by Boren that he would not have traded had he not been deceived by the false representation made him.

A similar case, and one which announces the principle which controls here, is that of *Parker* v. *Boyd,* 108 Ark. 32. We quote from the syllabus of that case the following statement of the law:

"In order to entitle plaintiff to rescind a trade of a horse on the ground of false representations by the defendant, there must appear some representation of a material fact concerning the horse upon which plaintiff relied and which was understood by the parties as an absolute assertion concerning the condition of the horse, and not the mere expression of an opinion."

It was there also said:

"In order to entitle plaintiff to rescind the trade, there must have been some misrepresentation of a material fact concerning the mare which the plaintiff relied upon and which was understood by the parties as an absolute assertion concerning the condition of the mare, and not the mere expression of an opinion."

(2) Here we have evidence that there was a misrepresentation of a material fact concerning the horse, which was relied upon and was understood by the parties as an absolute assertion concerning the title to the horse, and

the court should, therefore, have submitted the question of the right of rescission as the result of the false representation.

The facts in the case of *Merritt* v. *Robinson,* 35 Ark. 483, are very similar to the controlling facts of this case, and the principles there announced are controlling here. It was there said:

(3) ''Where the vendor is guilty of fraudulent misrepresentation, or concealment as to the essential inducement to the contract, the vendee would, on discovery thereof, have a right to rescind the contract, although no special agreement were contained therein authorizing him to rescind; for fraud, in all cases, gives the party defrauded a right utterly to reject the contract. Story on Sales, § 420; Hilliard on Sales, p. 326; *Strayhorn* v. *Giles,* 22 Ark. 521.

''But if the vendee elect to rescind the contract, on discovering the fraud, he must offer to do so within a reasonable time. *Ib.*

''If a vendor sells goods which he knows to be mortgaged, without giving information thereof to the purchaser, the sale would be considered as fraudulent. (Story on Sales, § 181; *Arnott* v. *Biscoe,* 2 Vesey 95). Appellant should have made known to appellee, when he swapped him the pony for the mule, that the pony was under mortgage to Pierce. Fair, honest dealing required this. The suppression of the truth is equivalent to falsehood, when the vendor is under obligation, as he was in this case, to disclose the truth. Hilliard on Sales, p. 326.

''If appellant had frankly told appellee at the time of the swap, that the pony was mortgaged to Pierce, as he should have done, but that he had permission from Pierce to trade the pony, and appellee had thought proper to make the exchange of animals after being so informed, then there would have been no fraud in the transaction on the part of appellant.''

It follows, therefore, that, for the error of the court in failing to submit the question of appellant's right of

rescission, the judgment must be reversed and the cause will be remanded for a new trial.