VAUGHAN v. HINKLE.

Opinion delivered November 12, 1917.

1. APPEAL AND ERROR—DIRECTED VERDICT.—In testing the correctness of a directed verdict, the testimony will be given its strongest probative force in favor of the appellant, and the cause will be reversed where the facts, when so viewed, present an issue which should have been submitted to jury.

2. PRINCIPAL AND AGENT—PROOF OF RELATIONSHIP.—Appellant sold cattle to C. and L., believing that C. and L. represented appellee in the transaction. Held, while the agency of C. and L. for appellee could not be established by declarations and representations made by C. and L. to appellant, yet appellant could show by the testimony of C. and L. that they were appellee's agents, and

that they had the authority to represent the appellee in the purchase of these cattle.

3. PRINCIPAL AND AGENT—PROOF OF RELATIONSHIP.—The evidence held sufficient to establish the relationship of principal and agent between appellee and certain parties who were engaged in the purchase of cattle for appellee.

4. CONTRACTS—SALE OF CHATTELS—MEETING OF MINDS.—C. and L. agents for appellee offered to purchase certain cattle from appellant, paying therefor with a check on appellee's account. At the request of C. and L. appellant 'phoned a certain bank to ascertain whether the check drawn by C. and L. would be honored, and upon being informed that it would, appellant accepted the check. *Held*, that there was a sufficient meeting of the minds of the parties to establish a contract between them.

5. SALES—RESCISSION—JURY QUESTION.—Appellant sold certain cattle to appellee's agent, taking a check in payment. Later appellee told appellant that he doubted if he could handle the cattle, and appellant resumed possession of the same. *Held*, it was a question of fact, whether the contract was rescinded by the conduct of the parties.

6. SALES—MORTGAGED CHATTEL.—The sale of a chattel subject to mortgage is not invalid, although the purchaser knows nothing of the mortgage, where the mortgagee has given the mortgagor express permission to make the sale.

7. SALES—BREACH OF CONTRACT—RIGHT OF SELLER TO IMPOUND.— Where the purchaser of chattels fails to pay the purchase price, where the sale is complete and the purchaser is in possession, the seller may, without giving bond, have the chattels impounded, pending an action for the purchase price.

Appeal from Independence Circuit Court, *D. H. Coleman*, Judge; reversed.

*Samuel M. Casey*, for appellant.

1. The court erred in quashing the writ for want of a bond. No bond was required by law. Kirby's Digest, § § 4968, 4967; 52 Ark. 453.

2. The court erred in directing a verdict for defendants. There was evidence of the agency of Crownover and Cole, and the principal was bound by the apparent authority he holds them out as possessing. 1 Clark & Skyles Law of Agency 1000, 1001; 48 Ark. 138; 42 *Id*. 97; 77 *Id*. 364; 55 *Id*. 632; *Ib*. 627, 630. Taking the

evidence in the strongest light for appellee it shows these agents had general authority to buy cattle. The case should have been submitted to a jury at least. 47 Ark. 366; 112 Am. St. 436.

3. Even if there was a mortgage on the cattle plaintiff had the right to sell, and it was no cloud on the title. 94 Ark. 168. A parol release of a mortgage is valid. 124 Ark. 545. Defendants obtained a good title. There was no fraud. 94 Ark. 168. See also 88 Ark. 103.

*Joe McCaleb, John B. McCaleb* and *Lyman F. Reeder,* for appellees.

1. The attachment was properly dismissed because the property was already in the possession of plaintiff and no bond was given. Acts 1877, p. 47; Kirby's Digest, § § 4966-9, 400-12; 45 Ark. 136; 52 *Id.* 450; 57 *Id.* 13; 49 *Id.* 287, 290; 68 *Id.* 417, 421; 64 *Id.* 132; 76 *Id.* 273; 99 *Id.* 335; 91 *Id.* 218.

2. No agency was shown and none existed. The only proof was the testimony of the alleged agents, which was not competent. Agency can not be proven by the agent himself. 92 Ark. 315; 31 *Ib.* 212; 33 *Id.* 251; *Ib.* 316; 44 *Id.* 213.

It was the duty of plaintiff to inform himself of the extent of the agents' authority before the deal. 62 Ark. 33, 40; 94 *Id.* 301; 66 *Id.* 336; 92 *Id.* 315; 74 *Id.* 557; Mechem on Ag., § 289; 23 Ark. 411; 98 *Id.* 166; 81 *Id.* 202; 28 *Id.* 95.

3. Any trade or sale which appellant may have made was immediately rescinded by him and possession of the cattle taken.

4. According to all the evidence there was no meeting of minds and no completed contract.

5. Appellant can not rely upon the existence of an agency by implication. There was not even apparent nor ostensible authority in the alleged agents. 2 C. J. 573-4-5, § § 213, 215, 218; *Ib.* 575-7.

6. As to agency by estoppel, see Clark & Skyles on Agency 460, § 195, 140, § § 56-9, p. 495. Also on appar-

ent scope of authority, 1 Clark & Skyles on Ag., 497; 112 Ark. 190.

6. As to when contract or act is apparently authorized, see 1 Clarke & Skyles on Ag., p. 100, 1005, § § 451-5; 10 R. C. L. 765, § 83. As to estoppel, 10 R. C. L. 698; 16 Cyc. 722-6, 734, 738, 744; 99 Ark. 260; 101 *Id*. 135.

7. The cattle were mortgaged. 35 Ark. 483. A verdict was properly directed.

### STATEMENT OF FACTS.

C. P. Vaughan, through his sons, who were authorized by him to do so, sold to W. R. Crownover and S. N. Cole, who claimed to be the agents of and acting for the Hinkle Livestock Company, a firm composed of John A. Hinkle, Elmer Hinkle and Bernard Hinkle, 106 head of cattle.

This suit was instituted by C. P. Vaughan, appellant, against the appellees, to recover of appellees the sum of $3,883.75, the purchase price of the cattle. Vaughan alleged, in substance, that the sale was negotiated on his part through his sons as his agents and on the part of the appellees through Crownover and Cole, who represented themselves as the agents of the appellees; that Crownover and Cole took the cattle in their possession, and executed checks on the First National Bank of Batesville, which checks were not paid. Vaughan also attached to his complaint an affidavit under the provisions of chapter 101 of Kirby's Digest, to have the property, which he alleged was in the possession of the appellees, impounded and held by the sheriff subject to the orders of the court.

The appellees answered, in substance denying the allegations of the complaint, and denying that Crownover and Cole were the agents of the appellees, and alleging that they had no authority to act for them, and further averring that as soon as they ascertained that appellant had sold the live stock to Crownover and Cole they notified appellant that Crownover and Cole had no authority to act for them and that thereupon appellant

immediately took the live stock back into his possession, and that the appellees had never at any time had possession of the live stock; and that at the time of the alleged sale the live stock was under mortgage to the Citizens Bank & Trust Company, and that no information as to such mortgage was given to Crownover and Cole, and that therefore even if Crownover and Cole were the agents of the appellees the concealing from them the fact that the property was then under mortgage would be a fraud on the appellees and render the sale absolutely void.

The undisputed evidence shows that Crownover and Cole purchased the cattle on the 9th day of February, 1917, from the sons of the appellant and that they represented themselves as the agents of the appellees and executed two checks in the sum of $1,941.88 each, one of the checks being signed "Hinkle Livestock Company, by W. R. Crownover," and the other being signed "Hinkle Livestock Company, by S. N. Cole;" that these checks were endorsd on the back "Payment stopped by Hinkle Livestock Company on the 10th of February, 1917."

At the conclusion of the testimony the appellees moved the court to direct the jury to return a verdict in their favor, and before the court ruled upon the motion the appellant asked the court to grant certain prayers for instructions presented by him, which the court refused, and to which the appellant duly excepted. Thereupon the court gave to the jury the following instruction: "Gentlemen of the jury, under the law applicable to this case and the facts in this case I instruct you to return a verdict for the defendants."

The appellant duly excepted, and from a judgment in favor of the appellees this appeal has been duly prosecuted. Other facts stated in the opinion.

WOOD, J., (after stating the facts). The appellees contend that the judgment was right for the following reasons: First, that there was no testimony to show that Crownover and Cole were the agents of the appel-

lees and authorized by them to make the contract of purchase; second, that if Crownover and Cole were the agents of the appellees, there was no meeting of the minds of the parties to the alleged contract of sale, and hence no completed contract; third, that if there was a completed contract of sale, the same was immediately rescinded by the appellant as soon as he ascertained that the checks would not be paid; and, fourth, that the failure of the appellant to notify Crownover and Cole at the time of the alleged sale that the cattle were under mortgage was a fraud upon the appellees that would void the sale, even if Crownover and Cole were their agents and authorized to make it. We will consider these questions in the order stated.

First: Was there any testimony to warrant the jury in finding that Crownover and Cole were appellees' agents and authorized as such to purchase the cattle?

C. P. Vaughan, Jr., testified concerning this that Crownover and Cole said they were buying the cattle for the Hinkle Livestock Company, and that they gave him the checks signed as appears on the face of the checks themselves which were introduced in evidence; that after the cattle were turned over to Crownover and Cole, and after they had driven the same as far as Sulphur Rock, and while there Hinkle called witness and asked him if the cattle had been sold and turned over to Crownover and Cole, and upon the witness informing him that they had, Hinkle asked what kind of cattle they were. Witness told him as near as he could, and the number, and where the cattle were, and Hinkle said he didn't know whether he could handle them or not at the price.

Cole testified that he and Crownover contracted for the cattle at the price for which the checks were drawn; that they were buying the cattle for the Hinkle Livestock Company; that they had commenced trading for them about the last of August of the year 1916. Witness testified that he had been trading some in cattle and did not have as much money as he wanted and he made arrangements with Mr. John A. Hinkle, of the Hinkle Live-

stock Company, to furnish him money to buy with; that he had been trading some along for them and had been buying for the Hinkle Livestock Company from last August up to the time of the sale, February 9; that he was buying a few cattle all along up to the time of the deal in controversy; that they bought both heifers and steers; that when cattle were purchased he would bring some of them to Hinkle at Batesville, and some he sold up the other way, that is, to Northern men, and when he sold the cattle to Northern men he would send the money to Mr. Hinkle. After buying the cattle from Vaughan they paid for same by writing a check for the Hinkle Livestock Company on the First National Bank at Batesville. When witness bought cattle for the Hinkle Livestock Company he signed the checks "Hinkle Livestock Company, by S. N. Cole." Witness was asked how he got the checks that he gave in payment for the cattle, and answered, "Hinkle would give me a check book." They gave witness authority to sign their names, that is, the "Hinkle Livestock Company," to these checks. Witness stated that after Hinkle told witness to buy cattle for him that Hinkle did not notify witness that he could not sign any more checks. To remunerate witness for his services he received as a commission half of the profits from the sale of the cattle bought by him for the Hinkle Livestock Company. Witness was asked how many checks he had drawn on the Hinkle Livestock Company's account while he was buying for them, and said that he could not say how many but that he had used more than one book of checks, and when he used one book Mr. Hinkle furnished him with another. He sent witness the check books by mail. Hinkle gave as a reason for not taking the cattle that he thought witness had paid too much for them. Hinkle had never before objected that the price paid by witness for cattle was too high. Witness had never consulted with John A. Hinkle, or any member of the Hinkle Livestock Company, in making deals for them in the purchase of cattle, as to whether or not he would buy. Witness was asked whether he had any authority

to buy these cattle for the Hinkle Livestock Company, and answered, "Well, I had the same that I thought I had had before," and stated that Hinkle had never limited him about the number of cattle that he should buy nor as to the kind he should buy. Witness was asked how many cattle he had bought for the company, and answered that he did not know. He testified that on one occasion before he had bought in one bunch fifteen head and gave a check for them signed "Hinkle Livestock Company, by S. N. Cole," which check he supposed was paid.

Crownover testified to substantially the same facts concerning his agency to purchase cattle for the Hinkle Livestock Company. Among other things he said that they had been buying most all kinds of cattle, cows, yearlings, heifers and steers, and when asked if he had authority to buy these cattle he stated that he thought he did. Witness then related that he had received a letter a short while before the purchase of these cattle from Capt. Hinkle in which he stated that if witness could get any "springing" cows he, Hinkle, wanted them, but that Hinkle had never told witness not to buy any other kind of cattle than what witness had been buying.

John A. Hinkle and Elmer Hinkle, members of the firm of Hinkle Livestock Company, testified that Crownover and Cole had no authority to purchase the stock in question or to buy stock generally for the Hinkle Livestock Company, and that they only had authority to buy for the company in a small way "up around Sidney," and that they had been specifically instructed just a short time before the purchase of the cattle in controversy to buy only a few "springers," that is, cows that would come fresh in the spring.

Other witnesses testified tending to corroborate the testimony of the Hinkles to the effect that before the purchase of these cattle they had limited the authority of Crownover and Cole to purchase only "springers."

(1) In testing the correctness of the verdict which was directed to be returned in favor of the appellees we

must give the above testimony its strongest probative force in favor of the appellant in determining whether or not it was sufficient to show that Crownover and Cole were the agents of the appellees to purchase cattle and as such agents had authority to purchase the cattle in controversy. When viewed in this light it is manifest that the above testimony presented an issue of fact which should have been determined by the jury under proper instructions. The court therefore erred in not submitting this issue to the jury.

(2) While the existence of the alleged agency of Crownover and Cole could not be established by their own declarations and representations made to Vaughan, yet it was perfectly competent for the appellant to show by the testimony of Crownover and Cole that they were the appellees' agents and that they had authority to represent the appellees in the purchase of these cattle. Even though these witnesses may have stated, after rehearsing the facts, that they thought they had authority to represent the appellees, the facts related by them were sufficient to warrant the jury in finding that they were the agents of the appellees and that they had authority to make the purchase. And the testimony of C. P. Vaughan, Jr., and of Crownover and Cole, considered in connection was sufficient to have warranted the jury in finding that express authority existed to purchase these cattle.

In *Concordia Fire Ins. Co.* v. *Mitchell,* 122 Ark. 357, 361-2, we said: "It is, of course, well settled that the existence of an agency can not be established by proof of the acts and declarations of the agent; but it is equally as well established that the agent himself may prove his agency."

(3) The evidence was uncontroverted that Crownover and Cole were the agents of the appellees to purchase cattle, but the appellees testified that the agency, at the time of the purchase under review, was limited to the purchase of cattle only in a small way up around Sidney, and to purchase what is designated as "springers" only. But the testimony of Crownover and Cole would have

warranted a finding that their authority was not so limited.

The testimony of the cashier of the First National Bank of Batesville to the effect that the Hinkle Livestock Company had left written instructions with the bank to honor the checks of Crownover and Cole when drawn in the name of the Hinkle Livestock Company, and the testimony of Crownover and Cole tending to prove that they had been furnished blank check books by appellees, with authority to purchase cattle and to draw checks for the purchase price and sign the name of "Hinkle Livestock Company" to these checks, without any limitation either as to the number, kind or price of cattle, was certainly sufficient to warrant a finding that Crownover and Cole were clothed with authority to represent the appellees in making the purchase under consideration.

(4)   Second:   Appellees contend that there was no meeting of the minds of the parties because Crownover and Cole, before the contract was completed by the acceptance of the checks on the part of the appellant and the delivery to and acceptance of the cattle on the part of Crownover and Cole, had instructed C. P. Vaughan, Jr., to phone to Hinkle Livestock Company and ascertain whether the checks they had signed for the purchase money would be paid. Appellant, on the other hand, contends that Crownover and Cole instructed C. P. Vaughan, Jr., to phone the bank and ascertain whether or not the checks would be honored.   Appellees insist that these contentions did not present a question of veracity as to who had produced the preponderance of the evidence, but that all the evidence should be accepted as true, and when so accepted it shows that there was no meeting of the minds.   We can not follow the learned counsel for appellees in this argument, nor agree with them in their conclusion.

If Crownover and Cole told C. P. Vaughan, Jr., before he received and accepted the checks, to phone the bank and ascertain whether the same would be paid, and

young Vaughan followed these instructions, and upon be-
ing informed that same would be paid, accepted the checks
and turned over the cattle to Crownover and Cole, there
was a meeting of the minds of the parties to the contract
and the same became complete, assuming that Crownover
and Cole were the agents of appellees and had authority
to make the purchase. Also if Crownover and Cole in-
structed young Vaughan, before he accepted the checks
in payment to phone the Hinkle Livestock Company and
Vaughan misunderstood such instructions and phoned
the bank instead, and upon receiving information that
the checks were good, accepted them, there still would
have been a meeting of the minds of the parties to the
contract. For, whether the instructions were to phone the
bank or the Hinkle Livestock Company, in either event
these instructions were for the benefit of Vaughan and
to enable him to determine whether or not he would ac-
cept the checks signed by Crownover and Cole, and the
minds of the parties met when Vaughan by inquiry as-
certained facts which satisfied him that the checks would
be paid and it was clearly the intention of the parties to
the contract that the same should be complete when
Vaughan accepted the checks in payment for the cattle,
if he did do so, and delivered the cattle to Crownover
and Cole. It was, therefore, an issue for the jury under
the evidence to determine under proper instructions as
to whether or not there was a meeting of the minds of the
parties, and as to whether or not the contract thereby
became complete.

The testimony of the young Vaughans was to the
effect that Crownover and Cole instructed C. P. Vaughan,
Jr., to phone to Batesville and ascertain whether the
First National Bank, on which the checks were drawn,
would honor the same by payment, and that he had fol-
lowed these instructions by phoning to one Kennerly,
cashier of the Citizens Bank & Trust Company, with
which his father transacted business, to ascertain the
fact for him and report; that Cole and Crownover were
present in the room when he was talking to Kennerly.

and he informed them that Kennerly said that the First National Bank would honor the checks; that they were in the room when the witness put in the call for Kennerly and were there when the report came back. The testimony of Cole and Crownover is in sharp conflict with this, which only shows that it was an issue to be submitted to the jury under proper instructions, as we have stated, to determine whether or not there was a completed contract of sale.

(5)   Third:  If there was a completed contract of sale, was the same immediately rescinded by the appellant as soon as he ascertained that the checks would not be paid?

Crownover testified, on cross-examination, that after Clarence Vaughan had talked with John Hinkle, at Sulphur Rock, he said to witness that he "would have to stop me." He stopped the cattle and took charge of them and took them back down to his grandfather's and put them in the field and forbade the witness from moving them out of that field. And on redirect examination he testified that when witness got word from Hinkle that they would not pay the checks he went up ahead of the cattle and stopped them. Cole came up there and said that Clarence said "we would have to stop them;" said that Clarence Vaughan said to hold the cattle up awhile, and he turned them down there in the lot, and witness and Cole stayed there that night and over the next day until along in the evening. He was asked if he did not try to get hay to feed them and answered that there was something said about hay there by Don Vaughan at the depot. "We decided that they could leave them there in the field until something was done with them." Witness said he did not want any hay at the high price of feed.

C. P. Vaughan, Jr., testified, in substance, that Hinkle called him at Sulphur Rock and asked him about the cattle and if the cattle had been turned over to Crownover and Cole; that witness informed him that they had; Hinkle then asked what kind of cattle they were, the price, etc., and said that he did not know whether he could han-

dle them at the price. Witness told Cole what Hinkle said and Cole asked witness what he intended to do about it. Witness replied that he intended to call Kennerly, and he did call Kennerly and Kennerly reported that the checks would be paid. Witness was asked this question: "Where did they put these cattle while you all came to Batesville?" and answered, "They were drove back to my grandfather's farm, on the Sulphur Rock and Cord road, and were put in his stalk field there." His testimony further discloses that after the cattle were put in this stalk field that they all went to Batesville that night, and that Crownover and Cole went to see Hinkle about the trade and the Vaughans went to consult their lawyer, and that they proceeded, under his advice, to sue for the purchase money and at the same time to impound the cattle as the property of the appellees, the vendees, still in possession.

The above testimony also presents an issue of fact, which should have been submitted to the jury under proper instructions, as to whether or not the sale was rescinded by the conduct of the parties to it.

(6) Fourth: If the alleged sale was complete, the failure of the appellant to inform the appellees at the time thereof that the cattle were mortgaged was not a fraud, under the undisputed proof in the record, and would not have rendered the sale, if otherwise good, void. For the undisputed evidence shows that the appellant had express permission from the mortgagee of the cattle to make sale thereof at any time he wanted to. Kennerly, the cashier of the Bank and Trust Company to whom the mortgage was executed, testified concerning this that it was the understanding at the time Vaughan executed the mortgage to the bank on the cattle that he could sell them at any time he wanted to and that he would not have to consult the bank before he did it. Witness knew they were selling the cattle when young Vaughan telephoned him in the morning, and the bank had no objection to it. If the sale had gone through and

the checks had been paid the bank had no objection to the deal.

This testimony shows clearly that the mortgage was no cloud upon the title which the appellant transferred to the appellees, if there was a sale.

In *Fincher* v. *Bennet,* 94 Ark. 165, we said: "The conveyance of the title to personal property by a mortgage or deed of trust is in effect only a security for a debt. Such property may be released from the mortgage or deed of trust by a sufficient parol agreement. And where the mortgagee authorizes or gives consent to the mortgagor to sell the mortgaged property, the mortgage lien thereon is discharged. Under such circumstances, a *bona fide* purchaser for value from the mortgagor obtains a good title to the property, whether he knew of the existence of the mortgage or not." See also, *Horton* v. *Thompson,* 124 Ark. 545; *State* v. *Asher,* 50 Ark. 427. Such was the case here, and the failure upon the part of the appellant to disclose the fact of the existence of the mortgage upon the property was no fraud upon the appellees.

The facts in the case of *Merritt* v. *Robinson,* 35 Ark. 483, upon which counsel for appellees rely, differentiate that case from the present one, and the case at bar is therefore not ruled by *Merritt* v. *Robinson, supra,* but is clearly within the rule announced in *Fincher* v. *Bennett, supra.*

Fifth: The court, before the trial began on the issues raised by the pleadings, on motion of the appellees, quashed the writ which was issued by the clerk under the authority of chapter 101, section 4967 of Kirby's Digest.

(7) If there had been a completed contract of sale, and appellees were in possession of the property, appellant had the right, in this action for the purchase money, to proceed to impound the property. This he was proceeding to do and no bond was required of him, under the above statute, as a condition precedent to the maintaining of his petition for impounding the property. In advance of the determination of the issue by the jury as

to whether or not there was a completed sale, and whether or not the property was in the possession of the appellees at the time of appellant's petition to have the same impounded, the court erred in quashing the writ directing the sheriff to take possession of the property, and in declaring that the property was still in the possession of the appellant.

For the error in directing the jury to return a verdict in favor of the appellees the judgment is reversed and the cause is remanded for a new trial.