WILLIAMSON *v.* LESSER-GOLDMAN COTTON CO.

Opinion delivered November 30, 1925.

*M. E. Sanderson,* for appellant.

*Shaver, Shaver & Williams,* for appellee.

McCULLOCH, C. J. Appellants sold a farm in Miller County, Arkansas, to W. L. Perkins, and received from Perkins a mortgage on the land and all crops produced on the land by Perkins in which he was interested in the year 1923, to secure the purchase price of the land and also for money loaned to Perkins to enable him to operate the farm. Perkins cultivated the farm for that year through tenants, or croppers, and was to receive a share of the crop. Appellees, Lesser-Goldman Cotton Company and Friedman & Hasson, were engaged in the cotton business, and each maintained a place of business in Texarkana.

During the autumn of 1923 Perkins marketed the cotton crop gathered from the farm, and the appellees purchased some of the crop from Perkins and settled with him. The Lesser-Goldman Cotton Company bought forty-one bales, and Friedman & Hasson bought two bales. The cotton was brought to market by Perkins, usually accompanied by the tenants or croppers, who produced the cotton, and it was sold in the usual and regular way on the streets of Texarkana.

Appellants filed this action in the chancery court of Miller County to foreclose the mortgage on the land and the crops, and Lesser-Goldman Cotton Company and

Friedman & Hasson were made defendants, and a decree was asked against them, respectively, for the value of the cotton which they had purchased from Perkins. Appellees answered, admitting that they had purchased the cotton from Perkins and settled with him for the price, and alleged that appellants had consented for Perkins to sell the cotton and thereby waived their lien, if they had any. They also denied that Perkins had any such title to the crops which he could mortgage, and alleged that he was merely the landlord of the croppers who produced the cotton. On final hearing the chancery court found in favor of appellees, and dismissed the complaint of appellants for want of equity.

We pass over the disputed questions of law and fact as to whether or not Perkins had such an interest in the cotton crop as he could mortgage to appellants, for we are of the opinion that the decree should be affirmed on the ground that appellants, through their agent, N. H. Williamson, waived their lien by consenting for Perkins to sell the cotton.

Mr. Turquette, who was the resident agent of Lesser-Goldman Cotton Company, and who purchased the cotton in controversy from Perkins, testified that at the beginning of the cotton season in September, and before he had purchased any cotton from Perkins, he had a conversation with N. H. Williamson, the authorized agent of appellants, and that the latter told him that he could buy the cotton raised on the farm directly from Perkins. The witness stated that the conversation first arose with reference to the sale by a Mr. Warmack of cotton in which appellants were interested, and that Williamson instructed the witness not to settle with Warmack for cotton purchased, but to call him (Williamson) over the telephone, so that he could come in and make a settlement, but that the witness could go ahead and buy cotton from Perkins. He testified that, pursuant to this con-

versation and knowing that Perkins was from time to time marketing cotton within the knowledge of Williamson, he bought the cotton in controversy, as well as other cotton, from Perkins. The last purchase was six bales, and before settlement was made for the purchase, Perkins left the community, and settlement was made with Williamson for appellants.

Mr. Willis, the resident agent for Friedman & Hasson, testified that he bought the two bales of cotton from Perkins, knowing that he had been marketing cotton throughout the season, and that Williamson was frequently on the street and cotton yard and was bound to have known that Perkins was marketing the cotton.

Other witnesses, who apparently have no interest in this controversy, testified that they saw Williamson on the street when Perkins was marketing cotton. One witness testified that he saw Williamson standing on the street near the wagon when Perkins sold a lot of cotton to Turquette.

The testimony is undisputed that N. H. Williamson was the authorized agent of the appellants, one of whom is his wife and the other his sister. Williamson testified as a witness and denied that he had a conversation with Turquette related by the latter on the witness-stand. He testified that he did not authorize Perkins to sell the cotton, and denied that he knew that Perkins had sold the cotton until after the sales were made.

The evidence clearly preponderates in favor of appellees in their contention that Williamson was present on the streets when Perkins was selling cotton and made no objections to the sales; and, as to the question whether or not Williamson expressly agreed with Turquette that the latter could buy cotton from Perkins, there is a sharp conflict between Turquette and Williamson, and it cannot be said that the finding of the chancery court is against the preponderance of the evidence.

It is a mere statement of elemental principles of law that where a mortgagee of chattels authorizes the mortgagor to sell the property, he is bound by a sale made to a purchaser from the mortgagor, and cannot complain, even though the purchaser knew of the existence of the mortgage. *Fincher* v. *Bennett,* 94 Ark. 165, 126 S. W. 392.

The finding of the trial court not being against the preponderance of the evidence, it becomes our duty to leave the decree undisturbed.

Affirmed.