MITCHELL *v.* MASON.

Opinion delivered December 21, 1931.

1002

*Harrison, Smith & Taylor,* for appellant.
*Holland & Barham,* for appellee.

HART, C. J., (after stating the facts). This court has held that the sale of mortgaged property by the mortgagor without the knowledge or consent of the mortgagee constitutes a conversion of the property, and that both the mortgagor and the purchaser are liable to the mortgagee for a conversion of the mortgaged property. *Sternberg* v. *Strong,* 158 Ark. 419, 250 S. W. 344.

On the other hand, if a mortgagee consents to a sale of the property by the mortgagor, the purchaser takes title free from the lien. In such cases, the waiver on the part of the mortgagee may be established by oral evidence, which may be direct and positive, or may be established by circumstances surrounding the transaction. *Fincher* v. *Bennett,* 94 Ark. 165, 126 S. W. 392; and *Vaughan* v. *Hinkle,* 131 Ark. 197, 198 S. W. 705. In these cases, the court expressly held that, where a mortgagee verbally authorizes a mortgagor to sell the property and the property is sold to a *bona fide* purchaser for value, the latter acquires a good title, whether he knew of the existence of the mortgage or not.

In the present case, the mortgage was duly recorded, and this gave Mitchell & Bollard constructive notice of its existence. Actual knowledge may be imputed to them from the facts and circumstances in the case, which it is not necessary to state because they had constructive

knowledge of the mortgage and were bound thereby. The Masons executed a written power of attorney to Pyles which was very broad in its scope. We have not copied it in full in the record on account of its length, and we deem such course unnecessary for the reason that we are of the opinion that, although it authorized Pyles to waive the mortgage in favor of Mitchell & Bollard, yet we are of the opinion that Pyles did not waive the mortgage or consent to the sale of the mortgaged cotton.

On the one hand, Pyles denied having given Dickerson the right to sell the mortgaged cotton; on the other hand, Dickerson was equally positive that Pyles gave him the right to sell the cotton. It is claimed that the testimony of Dickerson is corroborated by the tickets given by the ginner for the said cotton when he purchased it. There were sixteen of these tickets for sales, amounting in the aggregate to something over $1,297.66, commencing on the 22d day of November, 1927, and ending on the 14th day of January, 1928. These tickets or orders, however, were shown in each instance to have been given to Pyles and indorsed by him before the proceeds were paid to Dickerson. The indorsement of Pyles in each case amounted to a consent of the sale of that much of the property, but it did not establish such a course of dealing as would give Mitchell & Bollard the right to think that Pyles had waived the mortgage on the remainder of the cotton. On the other hand, it would rather notify them that he did not intend to do so because his signature indorsing the order was secured by Dickerson before the proceeds were delivered to him by Mitchell & Bollard. *Imperial Valley Savings Bank* v. *Huff*, 126 Ark. 281, 190 S. W. 116.

We do not think that the evidence as disclosed by the record establishes any system or course of dealing between the parties which would warrant a belief that Pyles had by such course waived the rights of the mortgagee in the premises in favor of Mitchell & Bollard. A straight rental contract was entered into between the parties for each year, and the mortgage in question in

this case was executed in April, 1927, and contains the usual clause prohibiting the mortgagor from selling or removing the property.

According to the decree, the chancellor made a general finding of fact in favor of appellees, and it cannot be said that his finding is against the preponderance of the evidence. Therefore the decree will be affirmed.