182

The Farm Bureau Cooperative Mill & Supply v.
Swift & Company.

5-1110                                    297 S. W. 2d 107

Opinion delivered January 7, 1957.

*J. R. Crocker* and *O. E. Williams,* for appellant.

*James R. Hale,* for appellee.

Paul Ward, Associate Justice.    The only question involved in this appeal is whether the actions of appellant amounted to a waiver of its mortgage on 6,860 broilers owned by Norman Spencer and sold by Spencer (through another party) to appellee.

Most of the facts forming a background to this litigation are not in dispute and may be briefly stated. Norman Spencer has for several years raised broilers in Washington County, Arkansas during which time he has frequently bought supplies and borrowed money from appellant, the Farm Bureau Cooperative Mill & Supply, located in Washington County with its principal place of business at Fayetteville.    As indicated, appellant is in the business of loaning money and selling supplies to those engaged in raising broilers in that section of the State.    Guy Eeds of Seminole, Oklahoma, d/b/a Oklahoma Poultry Brokerage Company, buys and sells broilers and has for years past dealt with broiler raisers in Washington County, Arkansas through its agent, Ray

Luginbuel, who lives at Lincoln in said Washington County. On November 16, 1954, Spencer gave a mortgage on 6,860 broilers to appellant to secure an indebtedness of $2,800 which was due and payable February 8, 1955.

On January 24, 1955 Ray Luginbuel (as agent aforesaid) purchased from Spencer said broilers for a total purchase price of $4,540.25, drawing a draft on Eeds through the First State Bank of Seminole, Oklahoma for said amount in favor of Spencer. Eeds took said broilers to Muskogee, Oklahoma and forthwith sold 4,500 of them to appellee, Swift & Company, for the sum of $2,833.75.

Spencer, upon receiving Eeds' draft for $4,540.25, took the same to appellant. Authorized employees of appellant accepted the draft, gave Spencer credit for the amount necessary to pay off the indebtedness to appellant, and gave Spencer its check for $1,620.47, being the balance due on the purchase price of said broilers. When appellant in due course presented the Eeds' draft for payment the same was dishonored and payment was refused.

On October 4, 1955 appellant filed this action in the Washington Chancery Court against appellee, asking judgment in the amount of $3,000, representing its secured loan to Spencer plus interest, on the ground that appellee had converted the broilers to its own use. Appellee defended on the ground that the mortgaged property in question had been sold by Spencer with the consent of appellant, and that appellant thereby waived its lien under the mortgage.

The case was tried on January 13, 1956, and at the close of plaintiff's testimony the defendant filed a demurrer to the evidence. The trial court sustained appellee's demurrer and dismissed plaintiff's complaint, resulting in this appeal.

In general, appellant relies on the principle of the law announced in the case of *May Way Mills, Inc.* v. *Jerpe Dairy Products Corporation,* 202 Ark. 397, 150

S. W. 2d 615, to the effect that the sale of mortgaged property by the mortgagor without the knowledge or consent of the mortgagee constitutes a conversion of the property, and that both the mortgagor and the purchaser are liable to the mortgagee for the conversion of the mortgaged property. It is admitted here, of course, that appellant had a mortgage on Spencer's broilers, that Spencer sold the broilers to Eeds who sold to appellee, and that appellant's indebtedness against Spencer has not been paid. Appellant says the chancellor committed error in dismissing his complaint because the evidence does not show the necessary knowledge or consent on its part. To sustain the order of the trial court appellee advances several arguments, one of which is that appellant waived its lien on the broilers because it consented to the sale. Since we have concluded that the trial court must be sustained on the above mentioned ground, we deem it unnecessary to consider its argument on the other grounds.

This court, in the *May Way* case, *supra,* after stating the general rule above announced, quoted with approval from *Mitchell* v. *Mason,* 184 Ark. 1000, 44 S. W. 2d 672, the following:

"On the other hand, if a mortgagee consents to a sale of the property by the mortgagor, the purchaser takes title free from the lien. In such cases, the waiver on the part of the mortgagee may be established by oral evidence, which may be direct and positive, or may be established by circumstances surrounding the transaction. *Fincher* v. *Bennett,* 94 Ark. 165, 126 S. W. 392, and *Vaughan* v. *Hinkle,* 131 Ark. 197, 198 S. W. 705. In these cases, the court expressly held that where a mortgagee verbally authorizes a mortgagor to sell the property and the property is sold to a *bona fide* purchaser for value, the latter acquires a good title, whether he knew of the existence of the mortgage or not."

Weighed under the above announced rule, the oral testimony and surrounding circumstances convince us that appellant consented to the sale of the broilers by Norman

Spencer, and that appellee was a *bona fide* purchaser for value.

It appears that most of the people connected with this particular sale of broilers had known and done business with each other for several years. The nature of the broiler business makes it important that the producers of broilers have a ready market at the proper time.

Thus, it was natural that appellant should help Spencer obtain a purchaser, as evidence shows it did do in this instance. This background of circumstances lends support to the testimony which, in general, is to this effect: Appellant knew that Ray Luginbuel, agent for the Eeds' Company, was a prospective buyer for Spencer's broilers, and there is evidence that appellant initiated the move which led to the sale; Appellant knew, before it accepted the draft on the Eeds' Company, that Spencer was selling the broilers upon which it had a mortgage; It is certain appellant made no claim of illegal procedure before it learned Eeds' draft was no good; When appellee purchased 4,500 broilers from the Eeds' Company, it had no knowledge of the source of the broilers and did not know they had been mortgaged to appellant, and; There is no testimony which shows bad faith or unscrupulous dealings on the part of any one involved. Every fact and circumstance convinces us that appellant knew and highly approved of the sale of the broilers in question, and would have gladly accepted the proceeds of the draft had it been paid in regular course. Appellant having once consented to the sale, its mortgage was discharged, and he will not be heard to say later that his consent was conditionally given, especially where the rights of a *bona fide* purchaser are involved. In *Fincher* v. *Bennett*, 94 Ark. 165, 126 S. W. 392, this court said:

". . . where the mortgagee authorizes or gives consent to the mortgagor to sell the mortgaged property, the mortgage lien thereon is discharged. Under such circumstances, a *bona fide* purchaser for value from the

mortgagor obtains a good title to the property, whether he knew of the existence of the mortgage or not.''
So, after Swift & Company had purchased the broilers in question from the Eeds' Company in Oklahoma without knowledge of any existing mortgage or the original ownership, appellant will not be heard to say that his consent to the sale of the broilers by Spencer was conditioned on Eeds' draft being good.

In upholding the action of the trial court in sustaining a demurrer to appellant's testimony, we are aware of the rule announced by this court in the case of *Werbe, et al.* v. *Holt,* 217 Ark. 198, 229 S. W. 2d 225, which rule was also considered and applied by the trial court. Giving the evidence in this case its strongest probative force in favor of appellant, we still conclude that it does not make out a *prima facie* case of liability against appellee.

Affirmed.

CARLETON HARRIS, C. J., not participating.